## THE UNITED STATES *v.* JOHN KELTY SMITH and JOHN CHANDLER SMITH.

Where the debtor is present and subject to the jurisdiction of the court, his creditor can not, simultaneously with an action for the recovery of his debt, have a general sequestration of his property, nor restrain him by injunction in the exercise of the rights of ownership.

As a general rule, the government of the United States, in its proceedings in its own courts, and in the courts of the State to which, in civil actions, it may resort, can only act through its offices and officers established by law.

Where the district court dissolved an injunction because it was obtained by one not competent to represent the plaintiff, the subsequent appearance of one duly authorized, and his prosecution of the case to the appellate court, can have no retroactive effect.

APPEAL from the First District Court of New Orleans, *Larue,* J. *L. Hunton,* District Attorney of the United States, *Miles Taylor* and *Thomas J. Semmes,* for plaintiff.

*Mr. Semmes* contended: That the Solicitor of the Treasury, by direction of the Secretary of the Treasury, empowered *Mr. Mechlin,* as special agent of the government, to institute this suit, and that the act of the Secretary of the Treasury is, in point of law, the act of the President of the United States. 1 Peters 296.  12 Peters 524.  1 R. R. 427.  The question then presented for solution is, has the President of the United States the lawful power to appoint an agent, other than the regularly commissioned United States Attorney, to institute a suit and represent the government *pro hoc vici.*

The United States is a body politic as well as a sovereign.  The capacity to contract and enforce the performance of contracts, is incident to the government as a body politic, and not as a sovereign.  *Cotton* v. *United States,* 11 How. 230.  10 Peters 343.  5 Peters 115.  As a body politic it must, of necessity, act through the instrumentality of agents.  The act of contracting or of suing not being the exercise of a sovereign power, the power to sue or contract exists independently of the Constitution of the United States, except in so far as the adoption of the Constitution was necessary to bring into existence a corporate entity.  Hence the power to sue or contract, is not expressly granted to the government by the Constitution.  It is evident, therefore, that the government could contract and sue anterior to, and independently of legislation on the subject, and *ex necessitate* appoint agents for the purpose.  The Constitution declares that the President " shall take care that the laws be faithfully executed."  This clause, it is submitted, vests the power in the Executive to appoint agents for the purpose of enforcing the laws.  This power, therefore, is vested in the President independently of legislation, and legislation cannot divest him of it.  The propriety of the exercise of the power is one thing; the existence of the power is another.  Now let us suppose Congress had passed no law creating the office of United States Attorney, would not the President have been authorized, nay obliged, to have made contracts with various attorneys, in various sections of the country, to prosecute the claims of the government ?  In the supposed state of things, the government would be under the necessity of making a contract with some attorney for each particular case.  To remedy this inconvenience, Congress passed the Act of 1789, creating the office of district attorney, and making it the duty of the district attorney to prosecute suits of the government.  Before this act was passed, it was a mere voluntary matter, a matter of agreement between the government and any attorney who might be selected, whether the attorney thus selected would or would not undertake a suit for the government.  The object of the act was to provide an officer, upon whom the President could at all times call, who would be bound to obey, and whose compensation would be fixed ; thus saving the trouble, delay and expense of making numerous contracts for the conduct of each particular suit.  While such an

UNITED STATES
v.
SMITH.

officer exists, and is paid to institute suits, the President would rarely exercise the constitutional power he possesses, because there would be rarely an occasion for it, and, if unnecessarily exercised, Congress would refuse to appropriate money to pay the expense; and hence the money power is the check upon the President so as to prevent abuses. That this is the true view of the subject, is illustrated by supposing that the Act of 1789, creating the office of district attorney, were repealed, would the government be defenceless? Again, suppose the present district attorney for Louisiana were dead, or ill, or temporarily absent, and instant action were necessary to enforce a right or protect the property of the government, would the President be obliged to wait until a new commission could be sent out from Washington? The Act of '89 is not exclusive in its terms, and was not designed to be so. If the Act of '89 were prohibitory, the Attorney General of the United States could not appear for the government in the Circuit Court, because the same section makes it his duty merely to appear in the Supreme Court at Washington.

Again, though the President might not have the power to appoint an attorney at law, it is no part of the duty of the United States Attorney to make affidavits, and the President could appoint an agent for that purpose. If so, the mere filing of the petition, with the affidavit of the agent, would be sufficient to maintain the injunction.

Again, by virtue of the Act of 1820, Statutes at large, vol. 3, p. 592, creating the office of agent of the treasury, and of the Act of 1830, vol. 4, p. 414, transferring the duties of the agent of the treasury to the solicitor, the Solicitor of the Treasury has the power to direct and superintend all suits in the name and for the use of the United States. This suit being then directed by him, is authorized by law. If the solicitor has the power to direct a suit, if necessary, he may employ persons to institute it. The propriety of the exercise of the power by him, or the President, cannot be judicially inquired into. Hence there is no strength in the objection, that oppression would result from the employment of irresponsible agents. The oppression, if any, results from the suit, not the employment of an agent to prosecute it, and the suit here is ordered by the officer appointed by law to direct its institution. The district attorney would be bound to obey the solicitor. See Act of 1830. So that the act of oppression, the suit, would be the same whether the instrument were the district attorney or an agent.

2d. No security is necessary for the purpose of obtaining an injunction when the government is a party. *Williams* v. *Chew*, 6 N. S 465. The object of security is to prevent oppression; the government is always presumed to act with justice and clemency. 3d. The facts stated in the petition authorize an injunction. C. P. art. 303. 8 L. R. 104. Art. 3150 C. C. Art. 1964 C. C. Art. 1965 C. C. 9 Wheaton 738. 5 N. S. 501. 8 N. S. 686. 4th Ann. 175. 12 R. R. 25, and particularly 16 L. R. 106. 4th. The judge below ought not to have condemned the United States to pay costs. The United States never pay costs. 6 N. S. 465. There ought not to be a judgment against the sovereign, because it cannot be enforced except by his permission. The injunction, if wrongfully issued, ought merely to have been dissolved.

*Roselius*, *Josephs* and *Grymes*, for defendants: The article 298 of the Code of Practice enumerates all the cases in which injunctions may issue against the defendants in a cause. From No. 1 to 8 of that article, all the cases in which injunctions may issue against the defendant are clearly stated.

The first seven numbers have no direct application to this case, but they show the general spirit and intention of the law to confine the remedy within reasonable and just bounds. It allows it to restrain the personal acts of the defendant in relation to property and rights easily located or described, in which a *primâ facie* case can be made out with clearness and precision, and when the circumstances of the case will show, at least, a proximate standard by which the judge can estimate the probable damage to the defendant by granting the writ, and enable him to take security accordingly.

No. 8 of this article is the only one directly applicable. It declares that when the ownership of an estate real or personal is in dispute, &c.

Ownership, as used in this article, means title or right in the estate, real or personal. The French text of the code is equally clear: "lorsqu'il a contestation sur la propriété d'une chose mobilière au immobilière," when there is a contestation as to the property in or title to a thing. The true meaning and spirit of

this number is as obvious as that of the others. It confines the writ to cases where the title is in dispute, where some right growing out of an estate or thing is claimed, a chose or thing which may be described, and which may be distinguished from other things, and cannot by possibility be extended to all the money, all the promissory notes and bills, and all the stocks that a defendant may have in his possession, either in his own right or belonging to others, without specification, description, enumeration or amount.

Injunctions against third persons not parties to the suit, are regulated by the articles 300, 301 and 302 of the Code. The first two of these articles provide for specific cases that can have no relation to this matter. The article 302 provides for cases of deposit or mere possession where a third person claims the ownership of the property by a suit; such third person may obtain an injunction, &c.

This article is in perfect harmony with No. 8 of article 298, and is clearly only applicable to cases where title, or possession, or some right growing out of title is in dispute.

But, it is said, that if this case be not within any of the provisions of the articles of the Code before cited, that it is within the discretion of the court, under the general provisions of the article 303 of the Code. We think it is clearly not so. This article is in the same spirit, lays down the same broad line of limitation, and is in perfect harmony with all the other articles quoted. It uses the same language: it says that, "besides the cases above enumerated, injunctions may issue when it is necessary to preserve the property in dispute during the pendency of the action; and as clearly limits the discretion of the court to cases where property, or the title to property, is in dispute, as any of the preceding articles, property that may be described, its value ascertained, and its nature defined; and that no warrant can be found in that article for an injunction where no title, no right of possession, and no right or interest in the property itself is set up by the plaintiff, and no description by count, weight, measurement, or amount is or can be stated: but a general writ, embracing all the fortune, money or property of a defendant issued upon such showing as is made in the plaintiff's petition. We, therefore, conclude that the injunction in this case is not warranted by a just interpretation of the law of Louisiana.

In the great case of *Livingston and the Steamboat Company*, which involved the statutory privilege granted to *Livingston* and *Fulton* of the exclusive navigation of the waters of New York by steam, the complainant asked an injunction to protect his vested right, under the statute of New York.

The law was laid down in the able and learned opinion of Chief Justice Savage to be, that injunctions are always granted to secure the enjoyment of statute privileges of which the party was in the actual possession, unless the right be doubtful ; and the injunction was refused, because the constitutionality of the law was doubtful. *Steamboat Company* v. *Livingston*, 3 Cowen, 755.

In the case of *Hart* v. *The Mayor*, &c., of Albany, the same doctrine is laid down by Chancellor Walworth. 3 Paige, 214.

In the case of *Wiggins et al.* v. *Armstrong et al.*, Chancellor Kent dissolved an injunction, because the plaintiff was not a judgment creditor. 2 John. Ch'y. Rep. 145.

The following cases are also in point: *Corporation of New York* v. *Mapes*, 6 John. Ch'y Rep. 49. *Ogden et al.* v. *Kip*, 6 John. Ch'y Rep. 160. *Reid* v. *Gifford, Ib.* 19. *Laasing* v. *North River Steamboat Company*, 7th John. Ch'y Rep. 164. *Storm* v. *Mann*, 4th John. Ch'y Rep. 21. *Amelung et al.* v. *Seecamp*, 9th Gill & John. 474. *Union Bank* v. *Poultney et al.*, 8th Gill & John. 332. *Maryland Savings Institution* v. *Schroeder, Ib.* 106.

The plaintiffs do not set up any right or title to the property. They do not pretend to be in any way creditors of *John Chandler Smith*. They acknowledge and charge that he is in possession and claims as his own, the large mass of property on which the injunction is to operate. The sole ground shown for the writ is, the fraud charged, that he is covering the property of the other defendant.

Fraud is never presumed, it must be proved. No fact is set forth or shown from which the truth of the charge can be inferred, or even rendered probable, until proved. It is, to say the least of it, uncertain; and while uncertain, a court of equity will not grant an injunction.

The United States are a great political corporation, invisible, and acting only through such agents as are designated by the Constitution or by acts of Congress made in pursuance of the Constitution. Under the description in the petition,

the United States can be informed of nothing and can have no belief. Therefore the affidavit verifies nothing.

No indictment could be maintained on it, because, in such a prosecution, the proofs necessary to maintain it must come from the side of the prosecutor, the crime must be clearly proved ; and how could the fact, that some officer of the government was informed and did believe in the existence of some of the facts set forth in the petition, be negatived by the prosecution.

We therefore conclude that the affidavit is totally insufficient to sustain the writ.

The defendants submit another point for the decision of the court.

They take it for granted that every defendant has a right, when sued by an agent, to call for the authority of that agent, and that he is bound to show a lawful and competent authority, or have his proceedings dismissed. *Shewell* v. *Stone,* 12 M. R. 388.

The laws of the United States have provided by whom and in what manner suits in their name shall be instituted and prosecuted. See Act of 1789, sec. 35, 1st Statutes at large, 92.

This suit was instituted and prosecuted by persons holding no office under the government, and having no apparent right to act on behalf of the government, or to use its name. This want of authority was assigned as one cause for the dissolution of the injunction. The agent or sub-agent who makes the affidavit, and who also signs the petition as counsel, then produced a letter from the Solicitor of the Treasury to one *Mechlin,* of the city of Washington, appointing him special agent to collect the debt sued for from one of the defendants, *John K. Smith,* and a sub-delegation from *Mechlin* to the gentleman who brings the suit ; both letters are in the record and will speak for themselves.

We respectfully contend that this is no sufficient authority to sue in the name or on behalf of the Government.

That no judgment pronounced in this suit would be *res judicata,* or protect the defendants against the further pursuit of the plaintiffs through a legitimate and lawful channel. The Solicitor of the Treasury has, by law, no power to make such an appointment. The act of Congress creating the office does not give any such power, and any such appointment is void. See Act of 1830, 4th Statutes at large, 414.

It is true that the district attorney has since appeared in the cause. But it was long after the judgment dissolving the injunction, and, we submit, that the correctness of that judgment should be tested by the state of things which existed at the time it was rendered.

By the court :

EUSTIS, C. J. This appeal was taken by the district attorney of the United States in behalf of the plaintiffs, from a decree of the Court of the First District of New Orleans, dissolving an injunction which had been issued at their instance. The reason given by the district judge for dissolving the injunction was, that *Mr. Semmes,* who made the affidavit on which the injunction was granted, as agent of the Government of the United States, and by whose agency the suit in which the injunction issued was instituted, had no right to appear to make the affidavit as agent for the Government of the United States, and that all his acts done in that character were null and void.

The district attorney of the United States has appeared in this court, and, aided by counsel, has asked the reversal of this decree and the maintenance of the injunction. The argument at law has not been confined to the point decided by the district judge, as to the want of authority on the part of *Mr. Semmes,* but has been extended to the subjects presented by the record.

It appears that on the second Monday of April 1822, *John Kelty Smith* appeared in the Circuit Court of the District of Columbia, and confessed judgment in favor of the United States for the sum of five hundred thousand dollars and costs. On the entry of the judgment, on the fourth of May following, it was provided that the same should be released, on the payment of the sum of $280,560 61, with interest from the 21st of September, 1821, and costs of suit.

The petition charges the indebtedness under this judgment, and that a suit was
instituted, simultaneously with the present suit, against said *John Kelty Smith*, for the recovery of the amount. The petition alleges, that the amount of the judgment was the balance due the United States on account of monies deposited with the said *John Kelty Smith*, as navy agent of the United States at New Orleans, and not accounted for by him; that, since the date of the judgment, the said *Smith* has done no business and held no property in his own name, but that his business has been done and his property held in the name of others; that, for the last fifteen years, the said *Smith* has been, and continues to be, engaged in the business of banking and brokerage, in the city of New Orleans. The substance of the charges of the petition, divested of all unnecessary prolixity is, that this business is done under cover of the name of the son of said *Smith*, *John Chandler Smith*, who does not reside in New Orleans, but in the city of Baltimore, in whose name all the property stands, and the business is exclusively conducted; that *John Kelty Smith* transacts, himself, all the business, in the name of the son, under a power of attorney from him, which is a mere fraud for the purpose of concealing the real party in interest; that a large capital, really belonging to *John Kelty Smith*, is thus secretly employed for the purpose of screening the same from his creditors, the plaintiffs; that this capital consists of money deposited in banks, bills, notes, stocks, and is kept in a form immediately convertible, and that the said *John Kelty Smith* has no other property, and that this is quite sufficient to pay the plaintiffs' debt; that *John Chandler Smith*, by being a party to these frauds and simulations, with the design and intent to defraud the plaintiffs, has become personally liable to them, in the amount of the effects thus standing in his name.

The plaintiffs then represent, that there is just reason to believe that the parties defendant will dispose of the effects thus held, for the purpose of defrauding the plaintiffs, and they ask for process of sequestration and injunction, for the purpose of preventing any disposal of them during the pendency of this suit. The petition concludes with a prayer for judgment, according to its allegations, and for general relief. Injunctions were issued, prohibiting the officers of the several corporate banks of this city in which the parties did business, from disposing of, or transferring, during the pendency of this suit, any of their capital stock, or any money, bills, notes or securities, deposited with them in the name of *John Chandler Smith*. The process granted on the petition of the plaintiffs, amounted, in fact, to a general sequestration of the whole capital and effects employed by *John Chandler Smith*, in his business as a banker and broker in the city of New Orleans.

The petition is signed by *Mr. Semmes* and another gentleman of the bar, as attorneys for the plaintiffs; the affidavit annexed to the petition, is made by *Mr. Semmes*, who attests that he is the duly appointed agent and attorney of the United States of America in this behalf.

The question was put to the counsel who argued this case for the plaintiffs, whether, conceding every thing which is alleged in the petition to be true, and the affidavit to be direct and sufficient as attesting its allegations, (which is far from being our impression) a proper case is made out for the issuing of the writs of injunction as prayed for. No precedent, no authority has been adduced in support of these proceedings, nor has even an attempt been made at the bar, within the knowledge or recollection of any of us, to institute them; nor is there any statute under which they are even indirectly sustained. Proceedings against an absconding debtor, for a general sequestration of his effects, at the

UNITEDSTATES instance and under the affidavit of three of his creditors, are authorized by
v.          statute. We have, also, a remedy against the property of absentees under a
SMITH.      foreign attachment process. But where the debtor is present and subject to
the process of the court, there is no warrant in the law, that we ever heard of,
for taking from his possession and control his property in *limine litis*, at the
instance of a plaintiff who sues him for the recovery of a debt, and for the
purpose of subjecting the property to the satisfaction of the judgment which
the creditor seeks to obtain. Supposing, therefore, that this property belongs, in
fact, to *John Kelty Smith*, and is in his possession, where is the power given to
the creditor, under any process of the court, to disturb him in his peaceable
possession of it, and to arrest, at once, without notice and without a hearing,
the business by which his livelihood is obtained? The plaintiffs, had they a
judgment, might have the remedy of judgment creditors against the property of
their debtor; but they have no judgment, in a legal sense, against *John Kelty
Smith*, and they have, accordingly, instituted their suit to obtain one. The
judgment they sue upon is a judgment rendered by a court, under the system of
the common law, in the District of Columbia. Under that system, after the
lapse of a year and a day, if no execution be taken out, the courts conclude
*primâ facie* that the judgment is satisfied and extinct, and no execution can after-
wards issue on it, unless the judgment be revived by process of *scire facias* under
the statute ; or the plaintiff may have his action of debt on the dormant judg-
ment, which was the only mode of revival known to the common law. 3d
Blackstone's Com. 422. Indeed, this question, by being stated, answers itself.
What would be thought of a plaintiff who should begin his suit on a promissory
note against his debtor, by a general sequestration of the debtor's property?
Such a proceeding is repugnant to all our ideas of the rights and remedies of
litigants under our laws.

Another point made by the defence, which has been very fully argued at bar,
and upon which the district judge decided is, whether there was any sufficient
authority to institute and prosecute this suit in the name and in the behalf of
the United States.

Had the suit continued to be prosecuted under the original authority only by
which it was commenced, and had the court come to the conclusion that the
authority was not sufficient, the suit might have been dismissed without com-
ment for want of a party plaintiff, and the United States could not be considered
as having been in court. But the district attorney of the United States has
taken this appeal in the name of the United States. The United States is
before the court, therefore, as the party appellant.

It appears that the suit was instituted by *Mr. Semmes*, as the agent of the
government, under the authority contained in a letter from *Mr. A. H. Mechlin*,
of Washington City. *Mr. Mechlin* derives his authority from the Solicitor of
the Treasury who states, in his letter to *Mr. Mechlin*, that he, *Mechlin*, having
proposed to collect the judgment against *Smith*, and the proposition having been
referred to the Secretary of the Treasury, that officer directed the solicitor to
employ him as special agent, to collect the judgment, on the terms mentioned in
a letter from the solicitor to the secretary ; he, therefore, in the furtherance of
this object, authorizes *Mechlin* to appoint, on behalf of the United States, an
agent to collect the judgment, and to institute all proceedings necessary thereto,
in the name of the United States, &c. Thus the solicitor appoints *Mechlin* to
collect this debt, with authority to appoint a sub-agent, and *Mechlin* appoints
*Semmes*.

The present suit was instituted in the Court of the First District of New
Orleans, on the 11th of December, 1851. A motion was made to dissolve the injunction on the 15th, and was decided on the 23d of that month in favor of the defendants. An application was made for a new trial, which was argued on the 17th of January following. The application failed, and the judgment dissolving the injunction was signed on that day. Up to the date of the 17th of January, the proceedings were conducted solely under the authority of *Mr. Semmes*, and without the intervention of the district attorney. On that day he entered an appearance and is of record one of the counsel on the argument for a new trial; and on his motion the appeal was taken to this court.

The district judge thought the authority of *Mr. Semmes* insufficient to enable him to institute the proceedings in behalf of the United States. This is not the first time that the officers of the government of the United States have brought the United States into the courts of this State, for the purpose of making use of legal process in the collection of debts due the United States. *The United States* v. *Bank United States*. 11 R. R. 418. They claim the right to the most stringent process against property, without giving the security which the law exacts from ordinary litigants. · It would seem to be but just that, in cases of this kind, the interests of the United States should be entrusted to a responsible public officer; and we think we are doing no more than our duty in commenting on the proceedings before us, as they are attempted to be sustained by the law officer of the United States.

Our impression is that, as a general rule, the Government of the United States, in its proceedings in its own courts and of the courts of the State to which in civil actions it may resort, can only act through its offices and officers established by law. The delegation of power to institute suits, by an executive officer, to an individual having no official character or responsibility; the sub-delegation of the same power, without any warrant of law for either, seems to be in conflict with the theory of our institutions, as we have understood them. We have not found any authority in the laws of the United States for the appointment of a private person to institute suits in the name of the United States, to bring them into State courts at his discretion, and thereby subject their great interests to ultimate adjudication. 1 Statutes at large 92 § 35. 3d *Ib.* 592. 4th *Ib.* 414. In each district of the United States there is a district attorney, whose duty, as established by law, is to prosecute all civil actions in which the United States shall be concerned. The Solicitor of the Treasury is to direct and superintend the suits of the United States. Instead of the action of the government through its constituted organs, instead of the direction of the solicitor to the district attorney, we have his appointment of a private individual, who again appoints a substitute, to do that which the law assigns as a duty to its responsible officers, under the sanction of their oath.

But the district attorney appeared, in this case, under instructions from the Treasury Department. We do not think his appearance has, as to the matters before us, any retroactive effect. After his appearance the United States may be bound by his acts, but we cannot consider it as giving any validity to the judicial proceedings upon which a decree had passed previous to his appearance.

His appearance, and avouching in the name of the United States what has been done in this suit, imposes on us the necessity of noticing the subject, lest it should be supposed there is a recognition, on the part of this court, of the doctrine maintained at bar in behalf of the government. We do not assent to it. We decide nothing on this point, because there is no necessity for it, and we do not

UNITEDSTATES wish to embarrass the asserted prerogative of the Executive of the United
*v.* States when the determination of a suit does not require it.
SMITH.

We live under established institutions, and under a government of laws. We consider the law officers of the United States as magistrates, standing, in the performance of their duties, between the government and the citizen. It is as much their duty to respect and save the rights of the citizen, in their official functions, as it is to collect the dues of the government. The law recognizes no other action on the part of its ministers, and the citizen has a right to appeal to, and have the benefit of their judgment and of their conscience, in all cases in which the power of the government is brought to bear upon him.

There may be cases not foreseen or provided for by law, and we do not undertake to assert the contrary, in which the President of the United States, under his constitutional power to take care that the laws of the United States be faithfully executed, may direct the institution of suits, by appointing persons for that purpose other than the public functionaries, but the present case presents no single feature of emergency or necessity, nor is it in that respect distinguishabe from an ordinary suit against a debtor inhabiting the same city with the responsible law officer of the government.

It is considered by the court, that a creditor, before judgment, is without right to obtain an injunction on the case and for the purposes stated in the petition ; and that, therefore, the judgment of the district court, dissolving the injunctions, be affirmed.