### No. 6744.

#### HUGO REDWITZ VS. E. WAGGAMAN, SHERIFF, ET AL.

Plaintiff having acquired certain movable property, partly in payment of a debt due him, partly for cash, and having received possession of the same and then hired it to the transferror, the creditors of the latter cannot attach it by a direct seizure as his property.

Art. 240, C. P., No. 4, is not intended to enable the attaching creditor to dispense with the revocatory action when there has been a *real* sale of the debtor's property, even if fraudulent, and to seize said property directly, as if the sale were simulated.

The fact that, in the attachment suit, the said purchaser signs the bond of the defendant to release the property, does not preclude him from asserting his ownership.

On the mere *quantum* of damages, this Court will not disturb the judgment of the Court below, unless the amount is manifestly excessive or clearly unsupported by evidence.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

*Edw. Phillips* for Plaintiff and Appellee.

*Singleton & Browne* and *J. H. Ferguson* for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. Plaintiff avers that, in a certain suit brought by defendants, E. C. Palmer & Co., against R. H. Benners & Co., the said Palmer & Co. caused a writ of attachment to issue, and caused to be seized thereunder property belonging to plaintiff herein, and in no manner liable for the debts of Benners & Co.; that by reason of said unjustifiable seizure, he suffered damages in deprivation of possession and use of his property, in injury to the same and deterioration in its value, and otherwise, for which he prays for judgment.

The defendants filed an exception of *lis pendens*, averring generally the pendency of another suit between the same parties, and growing out of the same cause of action, without any identification of the suit referred to by any description whatever. The exception was regularly fixed, tried and submitted, and it does not appear that any record or any other evidence was offered in support of the plea. The court overruled the exception. This disposes of that defense, as the record furnishes no basis for reviewing the action of the court.

Defendants then answered, reserving the benefit of the exception, pleading the general denial, specially averring that the property seized was in the possession of Benners, their debtor; that it had formerly belonged to him, that, if transferred by him to plaintiff, the latter never took possession; and that such transfer was, in any event, illegal and in fraud of the creditors of Benners, who was insolvent. The evidence satisfies us, that in February, 1874, Benners did sell the property in question, being certain printing presses and other apparatus of a print-

ing office, to Redwitz for $2500—a full and fair price; that the price was paid to the extent of $1500, by a debt then due by Benners to Redwitz, and that the balance was then paid in cash, used in taking up notes of Benners for rent then due his landlord, and bearing privilege 'on the property; that Redwitz received delivery and took possession of the property, and removed it from the building in which it was to another building rented by him, Redwitz, for the purpose, and there set it up and established it for the purposes for which it was intended, to wit, the carrying on of a printing office; that, not being a printer himself, he then rented the establishment to Benners, at a fixed rent of sixty dollars per month, and that such was the title by which it remained in the possession of Benners. There is absolutely nothing in the record to sustain the question of the perfect genuineness and *bona fides* of this whole transaction.

It is evident that property so situated, was not, on any theory, subject to direct attachment at the suit of a creditor of Benners.

Palmer & Co., however, caused this property to be attached, and refused to permit its release upon the demand of Redwitz. It was taken into actual custody by the sheriff and removed to his warehouse, and remained under seizure from December, 1874, to July, 1875.

Exempting Palmer & Co. from charges of malice or want of probable cause, they are, nevertheless, clearly responsible for the actual damages caused to Redwitz by their attachment of his property, unless the latter has, in some manner, estopped himself from claiming them.

It is charged that he is so estopped by reason of certain proceedings had in the attachment suit of Palmer & Co. vs. Benners, viz.:

First. It is said that Redwitz intervened in the case, joined Benners in a motion to dissolve the attachment, and after trial, said motion was denied and the attachment maintained; and that said judgment is final as to the validity of the attachment. We do find a motion to dissolve made in the joint names of Benners and Redwitz; but the grounds assigned do not involve the question of Redwitz's ownership—evidence offered by him in support of his title was objected to and ruled out by the court, on the ground that his ownership was not involved; and the reasons of the judge overruling the motion show that it was decided on grounds not, in any manner, affecting that question. He never intervened; his joinder in the rule to dissolve was quite irregular; his connexion with the case terminate with the decision thereof; and that decision settled nothing as to his ownership. We, therefore, think it has no effect on his rights as presently urged.

Second. It is said that when Benners subsequently bonded the property, Redwitz became surety on his bond, and thereby judicially admitted his ownership. No such admission logically results from such

action. Benners had the right to bond, and bonded, not as *owner*, but as *defendant*. C. P. 259. He had the right to bond, whether he was owner or not. And Redwitz, though the owner, even if he had intervened and asserted his title, could not, as the law then stood, have bonded.

No doubt the bond was given in order to enable Benners to return the property to Redwitz, as was done. If in order to effect this purpose, Redwitz was willing to become surety on the bond, we can see therein no waiver of any right. The bond may have rendered Redwitz personally responsible for the judgment rendered against Benners; but if that were true, it would only furnish additional reason to protect and enforce his rights of ownership of the property.

Third. It is urged that the attachment was never quashed, but that final judgment was rendered by the court against Benners for a certain sum of money—though without expressly recognizing any privilege on the property attached. However Redwitz may be affected by this judgment as surety on the bond of release, it is clear that, as owner of the property, he is not affected by it.

What concern had he, as such owner, with the further proceedings in that cause, after his property had been released on bond, and restored to his possession? No judgment therein could affect his property, but would operate, if at all, only on the bond. His case, as owner, is not different from what it would have been, had another person been surety on Benners' bond. We are not concerned here with his liability as surety. He was not a party to that suit, and after the release of his property, no judgment therein rendered could affect either his property, or himself personally, except as surety on the bond.

As to the *quantum* of damages allowed in the judgment, it does not seem excessive under the evidence—and we do not think, all things considered, the allowance more than replaces the plaintiff in the position in which he would have been, had his property never been seized.

On the mere *quantum* of damages, in a case like this, we are not disposed to interfere with the judgment of the court which heard the evidence and was familiar with all the facts, unless the allowance appears manifestly excessive or clearly unsupported by evidence.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellants' costs.

---

On Application for Rehearing.

Fenner, J. All the points suggested in this earnest application were carefully considered before forming our original opinion.

1st. The inconsistency suggested in the testimony of Benners and

Redwitz, is not real but only apparent, arising from confusion in the use of the word " office." The testimony is clear that Redwitz rented the building, No. 68 Camp street, for the express purpose of removing to it the materials purchased by him, and of establishing there a *printing office;* and that he actually removed them. He thereby accomplished an actual and complete delivery. This *printing office,* including the whole establishment, he rented to Benners, and Benners, under said lease, conducted the printing business as his own; and it is in this sense that he uses the word " office " in his testimony, when he speaks of it as *his* office.

2d. The questions as to the insolvency of Redwitz, the sale out of the usual course of business, the unjust preference given to Benners, cannot be considered in this case. The transaction was *real,* and not *simulated;* and whatever objections might be urged against it in a proper revocatory action, none such has been brought. A *real* sale, translative of property, and not revoked, cannot be disregarded by a creditor of the vendor, by direct seizure, under execution or attachment, of the property so transferred to, and in possession of, the vendee.

This is elementary.

3d. Counsel, we think, misapprehends the meaning of paragraph No. 4 of Art. 240 of the Rev. Code Practice, if he contends that the effect thereof is to subject to direct attachment property actually sold and delivered for a real consideration, though with intent to defraud or prefer creditors. The effect of such dispositions is simply to furnish a ground for attaching the *property of the debtor*—not to dispense with the revocatory action and authorize the direct attachment of property so really transferred.

The rehearing is refused.

Levy, J., absent.