## No. 9675.

### SUCCESSION OF JOSEPH ANGER.

A sale cannot be annulled by an opposition to a distribution of the proceeds of the sale. When a sale is real, a direct revocatory action must be brought for its annulment.

Where there is opposition to the distribution of the proceeds on a bare allegation of fraud, collusion, etc., in making the sale, the Court will not delay the distribution until it shall suit the pleasure of the opponent to institute a proper action to annul it, unless he has used some conservatory process to prevent the distribution.

An error of calculation may be corrected by this Court upon an application for rehearing; but the rights of interested parties will be reserved.

APPEAL from the Twenty-third District Court, Parish of Iberville. *Talbot*, J.

*D. N. Barrow* and *S. Matthews* for the Appellees.

*G. L. Bright* and *Read & Goodale* for the Appellants.

The opinion of the Court was delivered by

MANNING, J. A provisional tableau of distribution of this succession was before us in 1884 on the opposition of Humble, tutor, holder of one of the mortgages, and our decision of the issue presented by him is reported in 36 Ann. 252. Of the two plantations of the succession, "Hermitage" had already been sold. "Forlorn Hope" has been sold in the interval, and the plan of distribution of the whole assets is now opposed by sundry creditors.

The Gourriers hold the first mortgage and vendor's lien on the undivided half of Forlorn Hope.

Graves holds the first mortgage on Hermitage and an undivided half of Forlorn Hope and the second mortgage on the other half.

McCan's mortgage rests on both plantations, Humble's on Hermitage alone, and Cousins' on both, and all are primed by Graves.

### OPPOSITION OF SHAKSPEARE, SMITH & CO.

These opponents attack the sale of Forlorn Hope as fraudulent and collusive—the collusion being of the executrix and certain other creditors to reduce the appraisement and effect a sale for less than otherwise would have been possible, and the fraud being the consequent despoiling of the opponents. When they offered evidence to prove their allegations, objection was made that the sale could not be annulled in an opposition to an account, and the court sustained it and refused to hear the evidence.

The court ruled correctly. The opposition is in substance an action to annul the sale, and such action cannot be instituted in the form of an opposition to the distribution of the funds arising from the sale.

The sale was real and a direct revocatory action should have been brought for its annulment. Violett vs. Fairchild, 6 Ann. 193.

The opponents concede the correctness of that rule of law but urge that they should be permitted to prevent the distribution of the proceeds of a fraudulent sale. Their contention amounts to this, that on a bare allegation of fraud, etc., in a sale, made in an opposition to the distribution of the proceeds, the court must delay the distribution until it shall suit the pleasure of the opponent to institute a proper action to annul the sale. The lower judge made the proper disposition of the opposition by dismissing it.

### OPPOSITION OF B. COUSINS.

The brief of this opponent argues on the assumption that the executrix had given Humble priority over him in the distribution of the proceeds of Forlorn Hope, but his opposition is directed against the allowance of certain privileged claims and of other mortgage creditors. It is true, as he argues and as we have already stated, that Humble had no mortgage on Forlorn Hope, while Cousins had. The tableau does not propose to distribute any of the proceeds of Forlorn Hope to Humble. On the contrary it classes Cousins *quoad* this mortgage next after Graves and, after paying Humble out of the Hermitage sale, distributes the residue of that sale to Cousins as well as the residue of Forlorn Hope after paying antecedent mortgages. The judgment amends the tableau by reducing the sum coming to Cousins, and as the items of privilege allowed cause in part that reduction, this opponent attacks them. We think they were properly allowed.

### OPPOSITION OF HUMBLE, TUTOR.

The complaint of this opponent was that our decree, rendered when the case was here before, had been disregarded in this, that the proceeds of Hermitage are by the tableau of distribution made to pay an undue proportion of the fees, taxes, costs, and other expenses of administration. His brief contains an arithmetical statement of what he thinks that proportion is, and seems to be fair. The principle we announced is that each plantation must bear the burden of its own taxation, and the general expenses of administration are chargeable to each proportionately. His brief says that "the lower judge sustained the opposition and rendered such judgment as was believed carried out the decree of this Court on the Conner appeal." He is not an appellant and filed no answer for an amendment, nor does his brief say that he desires any, and it would not suffice to procure amendment if it did.

### APPEAL OF P. S. GRAVES.

This appellant asks the correction of certain alleged errors in the judgment. His mortgage was first on the whole property save only the Gourriers on one-half of Forlorn Hope and there are funds to pay him. This contest is between the second mortgage creditors for the residue of the proceeds—"an issue," he says, "in which the present appellant would have no concern had not the genius of blundering presided over the writing of the judgment, and caused a serious and unaccountable though seemingly clerical error as to the amount therein stated to be due him at the time of this new calculation."

After quoting from our opinion in this case in 36 Ann. 252, his brief proceeds:

"The difficulty then presented to the court was this, should the entire proceeds of Hermitage go to Graves, the second mortgage on Hermitage would be worthless, while the second mortgage on Forlorn Hope would be of perhaps face value. Should the mere accident of the priority of the sale of Hermitage ruin the security of one creditor and enhance the value of that of another? And yet, the proceeds of Hermitage belonged to Graves, and as to him the court could not touch them; accordingly, the court decided, in substance, that while the proceeds of Hermitage should be given to Graves as fast as converted into cash, yet, whenever Forlorn Hope should be sold there should be a fictitious marshaling of the assets of both places, and the surplus remaining after paying in full the first mortgage creditors should be distributed between the second mortgage creditors, just as though both places had been sold together.

"Graves and the other first mortgage creditors might at this future date have been settled with, or they might not; it mattered not so far as the instant issue was concerned. The theory of the new problem was to be, that no payments whatever had been made to them. All the funds and all the debts were to be marshaled anew, merely to see how these second mortgage creditors should fare in reference to one another."

The following extract from our opinion will shew what was really decided. Humble had asked that the proceeds of Hermitage be held and distribution of them be deferred until the other property was sold and we said we could not do that, but "we shall effect the same purpose so far as the rights of the opponent (Humble) are concerned by reserving and recognizing his right, when Forlorn Hope and other property shall be sold, to require such a distribution of the proceeds as will award him the same amount in satisfaction of his claim as he would

have received had the proceeds of Hermitage been present for simultaneous distribution."

Obviously this means, when the property has all been sold and the whole proceeds are ready for distribution, the claims of the various creditors shall then be paid according to their rank, and no one shall be injuriously affected because the exigencies of the situation had compelled the sale of one plantation before the other.

But this marshalling of the assets now to be made is not to ignore payments that have been made to any creditor. Graves' contention is that for the purposes of this distribution the payments made to him are to be ignored, and the interest on his claim is to be calculated regardless of the payments and of the interest on them. The correct sum due him can be ascertained only by computing interest and applying payments in the usual way, and this was done by the amended account and the judgment. His brief says, "all we ask for is an interpretation of the judgment that accords with the pleadings, the law, and the facts of the case, and this gives Graves the amount very nearly as set down in the last account."

The matter is certainly very complex, but a pains-taking examination has not revealed to us any cause for disturbing the judgment.

Judgment affirmed.

---

ON APPLICATIONS FOR REHEARING.

WATKINS, J. With the principles announced in 36 Ann. 252, in which the previous account of same executrix underwent an examination, we are perfectly satisfied; and we find no occasion to disturb the recent decree, in so far as the oppositions of B. Cousins, Humble, tutor, or Shakspeare, Smith & Co., are concerned; but upon a careful examination of the provisional account filed February 4, 1885, and the supplement thereto filed on the 14th of April, 1885, we feel satisfied that the judge *a quo* made a clerical error in his decree, in making a deduction of the sum of $6,075.10 from that of $12,999.58, which is the true amount due P. S. Graves.

We adopt the following as a correct calculation, viz:

| | | |
|---|---:|---:|
| Principal of Graves' debt | $16,000 | 00 |
| Interest to March 3, 1883 | 1,436 | 44 |
| Amount | $17,436 | 44 |
| By amount paid March 5, 1883 | 3,000 | 00 |
| New principal | $14,436 | 44 |
| Interest to maturity first Hermitage note | 1,187 | 99 |
| Amount | $15,624 | 43 |

By first Hermitage note... ...................$2,850 00
By cash....................... .. ............   600 00—   3,450 00

New principal.......................................$12,174 43
Interest to date of sale of Forlorn Hope, February 7, 1885...   825 13

Balance due........... .  ........................$12,999 56

And to this sum he is entitled, to be paid out of the proceeds of the sale of the Hermitage and Forlorn Hope plantations, by preference recognized by the judgment of the district judge.

It is therefore ordered, adjudged and decreed that the former opinion and decree herein rendered, and that of the court *a qua*, be so amended as to conform to the aforesaid calculations; and that same remain in all other respects undisturbed; and that all costs of appeal be taxed against the succession—the right of any interested party to apply for a rehearing, upon the points herein decided, within the legal delay, being reserved.

### ON SECOND APPLICATION FOR REHEARING ON THE PART OF THE EXECUTRIX AND B. COUSINS.

In order to make our former opinion and decree plainer, and leave no room for doubt as to its true intent and meaning, we amend and alter the same so as to read as follows, viz:

It is ordered, adjudged and decreed that P. S. Graves is entitled to be paid and shall receive from the net proceeds of the sale of the one-half of Forlorn Hope plantation, not subject to the Gourrier mortgage, and the proceeds of the sale of the Hermitage plantation, the net balance of $12,999.56; and if the proceeds of the sale of the Hermitage plantation, viz:

Amount paid on first account..............................$3,000 00
Amount first Hermitage note.............................. 2,850 00
Amount cash .........................................   600 00

Aggregating the sum of...................... .........$6,450 00

have not been paid as stated in the account and judgment appealed from, same shall be paid him with rank and preference as a first mortgage creditor.

And as thus explained our original judgment remains undisturbed.