No. 3829

Second Circuit

W. F. TAYLOR CO., INC., v. CAMPISI ET AL.

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)

Chandler & Chandler, Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for plaintiff, appellant.

Thos. W. Robertson, of Shreveport, attorney for defendants, appellees.

ODOM, J. On March 20, 1929, V. L. Campisi executed a promissory note payable to himself for $1,500, due six months after date, and secured by mortgage on real property. This note fell into the hands of the plaintiff, W. F. Taylor Company, Inc. It was not paid when due and on December 6, 1929, Taylor Company filed suit to collect it.

W. F. Taylor Company alleged that Campisi, the maker of the note, had mortgaged, assigned, or disposed of, or was about to dispose of, his property, rights, and credits, or some part thereof, with the intent to defraud his creditors, or give an unfair preference to some of them, and prayed that the debtor's property be attached. A writ of attachment was issued by virtue of which the sheriff seized a certain money judgment rendered by the district court of Bossier parish in favor of one Sam Pedro for approximately $12,000, it being contended by plaintiff that said judgment was the property of its debtor, Campisi, and not the property of Pedro. The defendant, Campisi, admits that he owes plaintiff the amount represented by the note, but moved to dissolve the attachment on the ground that the allegations of plaintiff's petition to the effect that he had mortgaged or disposed of his property with fraudulent intent were untrue and without foundation, and that he was not in fact the owner of the judgment attached and had no interest therein. The lower court rendered judgment for plaintiff for the amount claimed, but dissolved the attachment with damages. Plaintiff appealed from that portion of the judgment dissolving the attachment.

Plaintiff alleged, and tried to prove, that its debtor, Campisi, in collusion with two of his Italian friends, Angelo Ladato and Sam Pedro, had, while "in failing circumstances," disposed of certain property with intent to defraud his creditors. The transactions between Campisi, Ladato, and Pe-

dro, which are relied upon to show that Campisi, plaintiff's debtor, was guilty of making the disposition of his property to defraud his creditors are somewhat involved and are, in sum and substance, as follows:

Campisi owned certain property in Shreveport known as the "Hotchkiss property" and Angelo Ladato owned about nineteen acres of land in Bossier parish. On December 3, 1928, the two entered into a contract by which Campisi agreed to sell the Hotchkiss property to Ladato for $8,000, and Ladato agreed to sell his Bossier parish property to Campisi for $10,700. This contract was reduced to writing and recorded. It is conceded by all parties that this was an agreement to exchange properties. It is also agreed that it was understood that when the exchange was made, Campisi would owe Ladato the difference between $8,000 and $10,700. Sam Pedro, the third man, had nothing to do with the transaction between Campisi and Ladato. But Campisi owed Sam Pedro approximately $3,000 which Campisi wanted to pay, but could not because he had no money. As between Campisi and Pedro, it was agreed that instead of Ladato transferring the Bossier parish property to Campisi, it should be transferred to Pedro instead in order that Campisi might liquidate his indebtedness to Pedro. Accordingly, on January 26, 1929, Ladato, at the request of Campisi, sold his Bossier parish property to Pedro, the notarial act of transfer reciting a consideration of $10,700; paid as follows: $2,935.21, paid in cash, the assumption of vendor's lien notes against the property amounting to $4,285, and Pedro gave his note for the balance, amounting to something over $3,000.

On the same day, Campisi sold to Ladato by notarial act the Hotchkiss property mentioned in the contract for $8,000, paid as follows: $3,000 cash, and the assumption of certain mortgage notes for $5,000. So that the contract to sell or exchange between Campisi and Ladato was carried out as contemplated, except that Ladato sold to Pedro instead of to Campisi. As already stated, there was a difference of approximately $3,000 in the value of the Hotchkiss property and the Bossier parish property, so that when the contract was carried out, Campisi owed Ladato approximately $3,000, representing this difference. This amount was not paid by Campisi personally but was paid to Ladato by Sam Pedro, the amount paid Ladato being a part of the purchase price of the Bossier parish property. The testimony clearly shows that Pedro paid Ladato this amount. There is no question but that Ladato received for his Bossier parish property the consideration which he asked, which was made up by the transfer to him by Campisi of the Hotchkiss property, valued at $8,000, and the balance paid by Pedro. It made no difference with Ladato whether he sold direct to Campisi or to another. All he wanted was the value of his Bossier parish property, which he obtained. If Ladato had sold his Bossier parish property direct to Campisi, as he originally agreed to do, Campisi would have owed him approximately $3,000 as the difference in values, but Campisi substituted Pedro for himself, and Pedro paid the difference.

As already stated, the deed from Ladato to Pedro conveying the Bossier parish property recited that the total consideration of $10,700 was paid by the assumption of certain mortgage notes against it, the payment of $3,000 in cash and a note of Pedro's for something over $3,000. But it is conceded that the cash mentioned as having been paid was not in fact paid, but in-

stead, Pedro canceled the debt which Campisi admittedly owed him of that amount. Pedro, therefore, paid every dollar of the consideration recited in the deed to him.

Referring now to plaintiff's petition, it is alleged, as a basis and ground for judgment, that the "instrument above referred to, executed by Angelo Ladato (Lodotto) to Sam Pedro, was so executed by Ladato (Lodotto) at the request of V. L. Campisi and for the use and benefit of said Campisi; that the instrument was executed by Ladato (Lodotto) in fulfillment of his obligations under the agreement described in Article 4 of this petition; that Sam Pedro was not the real purchaser of said property but acquired it for the account of V. L. Campisi and took title in his (Pedro's) name for the purpose of shielding said property from seizure by creditors of V. L. Campisi; that at the time said transaction occurred V. L. Campisi was in failing circumstances and said property was taken in the name of Sam Pedro as a result of a conspiracy between Sam Pedro and V. L. Campisi, and to operate as a mask in order to defeat the claims and in fraud of the rights of said Campisi's creditors."

On the merits, the district judge held and we fully concur in his views, that the testimony adduced fails to support these allegations. It is true that Ladato sold to Pedro at the request of Campisi. But there is nothing to support the contention that it was intended that Pedro should take the property in his name to be held for Campisi, and nothing to show that Campisi by this transaction was attempting to shield his property from the pursuit of his creditors. Under paragraph 4, article 240 of the Code of Practice, a creditor may attach the property of his debtor when he has disposed of it, or is about to do so, with intent to defraud his creditors or give an unfair preference to some of them. An attachment under this paragraph necessarily falls when no bad faith or fraudulent intent exists. The record fails to disclose that Campisi was guilty of any bad faith or fraudulent intent. There are no other transactions proved or referred to indicating such intent. Campisi testified that he used every dollar he could get to pay his creditors and that he had never at any time preferred one to another, and his testimony was unchallenged. Therefore, plaintiff has nothing whatsoever to support its charge of fraudulent intent and bad faith except the transaction above detailed, and that transaction, considered in connection with all the testimony, does not disclose fraudulent intent. It is not shown that Campisi was insolvent in January when this transaction took place. Later in the year, there were four suits filed against him, and he at once paid the debts. Still later, other creditors obtained judgments against him, the amounts of which are not shown. Whether he owned other property at the time is not shown, and no attempt was made to prove that the plaintiff could not have realized the full amount of its note from a sale of the property which was mortgaged to secure it.

Counsel for appellant in their brief (page 17) say:

"Our contention is that this transaction as between these two was a simulation as a sale. In other words, although this transaction appeared to be a sale it was not one in fact."

There is no merit in this contention. The property was transferred by Ladato to Pedro by notarial act for a consideration of $10,700, all of which was paid by Pedro's assumption of a vendor's mortgage against the property amounting to $4,285, his paying to Ladato about $3,000 and his canceling a debt against Campisi for the balance. The sale was therefore no sham, no mere fiction, no simulation. It was a real transaction. The suggestion that the property was put in Pedro's name to be held for Campisi is supported neither by the facts nor by reason. Just what advantage Campisi could have obtained by having Pedro take the property in his name is not explained. It is not contended that the property was worth more than Pedro paid for it. Assuming that it was intended that Pedro should hold it for Campisi, what could he gain? The mortgages against it had to be paid, Ladato· had to be paid, and Campisi had to pay Pedro what he owed him. The aggregate of these amounts was the full value of the property. If Pedro paid the amount of the mortgage against the property and paid Ladato, certainly Campisi would be indebted to him for these amounts· and still be indebted to Pedro for the personal debt which Campisi owed him.

Counsel further say in brief that in any event it must be held that this was a giving in payment. We think it may be so considered, at least to the extent of the amount that Campisi owed Pedro. But that does not help plaintiff's cause. A giving in payment is a real contract and vests title in the creditor who takes possession. It cannot be disregarded by other creditors. Contracts which are real may be avoided by revocatory action, but not otherwise. Johnson v. Kingsland & Ferguson Mfg. Co., 38 La. Ann. 248; Succession of Anger, 38 La. Ann. 492; Majors v. Dennis, 35 La. Ann. 336; Redwitz v. Waggaman, 33 La. Ann. 26; Bevens v. Weill, 30 La. Ann. 185; Theurer v. McGibbon, 28 La. Ann. 29. Plaintiff has not sought to set aside the transaction by revocatory action.

Counsel complain that the fee allowed the attorney for the attached debtor is excessive. All of the services rendered by the attorney were under the eye of the court and the witnesses called testified that his services were worth approximately $500. The court allowed him $400. As the fee allowed does not seem to us excessive, we shall not disturb the judgment of the district court in that respect.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed, with costs in both courts.