9687.

JAMES C. JOHNSON vs. KINGSLAND AND FERGUSON MANUFACTURING COMPANY.

When a sale is a mere simulation it may be disregarded and be treated as a nullity by a creditor of the seller, but when the sale is real, however fraudulent, the creditor cannot seize the property in the possession of the buyer, but must resort to the revocatory action. And this rule is applicable to the sale of movables as well as immovables.

APPEAL from the Eleventh District Court, Parish of Natchitoches. *Pierson*, J.

. *W. G. McDonald,* for Plaintiff and Appellant:

"A sale of partnership property by one of the commercial partners on the eve of insolvency is null and void, and will be set aside." 24 Ann. 247, 217; Ann. 75; 2 R. 38; 25 Ann. 169.

The recording in the mortgage office of an act of sale, containing a vendor's privilege on a "sugar mill and machinery," is sufficient to preserve the vendor's privilege against third persons. The subsequent incorporation of the machinery into the mill converts it into an immovable by destination, but the conversion does not prejudice the privilege and the same may be signed and sold separately, as they may be detached and removed without injury to the soil or structure.

Joseph O. Cailin vs. M. T. Gordy, sheriff, et al., 32 Ann. 1287; 28 Ann. 749; 34 Ann. 925.

*Jack & Dismukes,* for Defendant and Appellee:

"Even when it is shown that the expressed consideration of a transfer does not exist, the contract cannot, on that account, be invalidated if the transferee proves that there was another legal and sufficient consideration." 30 Ann. 966; 32 Ann. 94.

"When immovable property has been sold by authentic act, valid on its face and accompanied by actual delivery and continuous possession and control by the vendees as owner, the seizing creditor will not be allowed to allege and prove that the sale is a fraudulent simulation." 33 Ann. 1026.

"But we think the only issue which could have been passed upon in this case was that of simulation—the only issue which the creditor has a right to make when he commences with a seizure" 31 Ann. McAdams vs. Soria, p 865.

A party who judicially demands to be paid the proceeds of a sale, admits thereby the legality of that sale, and is estopped from impeaching it. 29 Ann. 274; 31 Ann. 100; 23 Ann. 245; 22 Ann, 135; 31 Ann 81.

The vendor's privilege on movables, can only be enforced while the goods are in possession of the vendor. 20 Ann, 545 and 557; C. C. 3227.

Actual malice need not be shown, to entitle a party to exemplary damages; if the act was wantonly or recklessly done, it is enough, or if in evident disregard of the rights of others. Bouvier Law D. p 630; 26 Conn. 416; 42 Miss. 607.

The opinion of the Court was delivered by

MANNING, J. The plaintiff enjoins the sale of certain parts of the machinery in the Pelican Saw-mill which the defendant was provoking under a *fi. fa.,* issued upon a judgment it obtained against Hardee Brothers and Isaiah and William T. Hardee, the individual members of that firm. They were formerly owners of the mill. The property seized is alleged to be worth twelve hundred dollars.

In January, 1885, Johnson bought William Hardee's interest in the whole mill and machinery, and the timber, wagons, teams, etc., but the written deed was not executed until April 2, following. The consideration was expressed to be cash but in fact a part of the price was paid by the conveyance from Johnson to Hardee of a tract of land. He also bought Isaiah's half of the same property on April 2, and both

these deeds were recorded on the 6th of that month, and Johnson, who·
had possessed one-half of the property since January, thereafter had
possession of the whole.

The property seized is a wheel, carriage, ways, shingle machine,
pulleys, several saws, and a long list of such like pieces of machinery.
The whole machinery and the mill are alleged to be worth five thou-
sand dollars. Over eighteen thousand dollars are claimed as damages.

The judgment of the defendant against Hardee Brothers was
rendered April 11th, a few days after the recording of the sale of the
mill by them to the plaintiff, and was obtained upon the notes of the
firm representing the purchase price of these pieces of machinery.
The judgment recognized the vendor's lien. Execution issued on May
12th against Hardee Brothers and the individuals William and Isaiah,.
and these pieces of machinery were seized and advertised to be sold in
the following September, and at the same time William Hardee's land,
that he had acquired from the plaintiff in payment of a part of the
price of his half of the mill, was seized to satisfy the defendant's·
judgment.

After the general issue the defendant pleads that the plaintiff's pur-
chases from the two Hardees were fraudulent simulations made and
entered into by all three parties to defeat and defraud it, and it prays
that these titles of Johnson to the property be declared fraudulent
simulations.

The allegation of the plaintiff is that the sale was real and *bona fide*,
that the titles were of record and he was in possession under them, and
the seizure was illegal, tortious, and malicious, and he invokes the rule
that when the sale is real the creditor cannot seize the property in the
possession of the purchaser but must resort to the revocatory action.

The application of this rule to the sale of movables was examined
with great care in McAdam vs. Soria, 31 Ann. 862, and all the antece-
dent decisions were reviewed by the court in the opinion read in that
case, where it was said, " the settled jurisprudence is that where the
sale is a mere simulation, it may be disregarded and treated as a
nullity by the creditor of the seller. But where there is a real sale,
however fraudulent, the creditor cannot seize the property in the
possession of the purchaser but must resort to the revocatory action."
And that opinion goes on to say the rule was applied to movables in a
series of decisions beginning with Peet vs. Morgan, 6 Mart. N. S. 139,
down to Bass vs. Messick, 30 Ann. 373, and citing them. It is too
well established to be controverted now. Indeed, this main ground of
the injunction is not discussed or alluded to in the defendant's brief
but is passed *sub silentio*.

The proof shows incontestably that the sale was real whatever may have been the motive of the parties. Johnson testifying says the mill cost him altogether nearly nine thousand dollars. He assumed a large number of the obligations of Hardee Brothers as part of the price and paid Isaiah one thousand dollars and William three hundred cash. Isaiah Hardee says Johnson bought his brother's half interest in the property in January, 1885, and was his partner from that time, and that he sold to Johnson because he had not money to run the mill and Johnson had not furnished the money he had promised. He estimates the mill as worth twelve thousand dollars at the time of sale and says Johnson assumed the payment of all the debts of which there were a large number. But the Hardees made a list of their debts at the time of the sale for Johnson's information which he was to assume and did assume, and this debt to the defendant was not on it. Johnson gave his notes to the several creditors whose claims he had assumed to pay and he gave none to the defendant. The Hardees had given the defendant a mortgage upon some property in Texas to secure its claim and seem to have considered that that property was sufficient to pay it. Johnson knew of the defendant's claim afterwards certainly for he knew of the suit against Hardee Brothers and advised them to confess judgment and they did it. But there was no assumption of this claim by him, nor is there any allegation by the defendant that he had assumed it. The issue raised by the pleadings is simulation *vel non*, and the proof establishes that the sale was not simulated, and the injunction was therefore rightly issued and must be sustained. .

The plaintiff is entitled to damages but the record does not enable us to estimate them satisfactorily. His own testimony is not sufficiently specific. For instance he says: " I cannot say exactly what amount I have been damaged by this seizure on account of loss of credit, but estimate it at $12,000 or $14,000." There must be an exhibit more in detail of the damages suffered before we can reasonably be expected to assess them, and we shall therefore give both parties an opportunity to address themselves with more particularity to the question of the amount of damages that should be awarded. Therefore

It is ordered and decreed that the verdict of the jury is set aside and the judgment thereon is avoided and reversed, and that the injunction of the plaintiff is perpetuated, reserving to the plaintiff the right to institute a suit for the damages sustained and reserving to the defendant the right to institute a revocatory action to annul the sale. It is further decreed that the plaintiff recover of the defendant his costs in both courts.