(66 South. 551)

No. 20,766.

WHITNEY–CENTRAL NAT. BANK et al. v. SINNOTT et al.

(Nov. 4, 1914.  Rehearing Denied Nov. 30, 1914.)

*(Syllabus by the Court.)*

1. FRAUDULENT CONVEYANCES ☞304.— INJUNCTION ☞44—GROUNDS — TRANSFER OF PROPERTY.

An ordinary creditor, in a suit to have a transfer made by his debtor decreed a mere simulation, or, in the alternative, to have the act declared fraudulent and annulled, has no right in law or equity to enjoin the debtor from transferring other property in which the creditor has no proprietary interest and on which he has no lien or privilege; nor has such creditor a right to enjoin his debtor's vendee from disposing of the property acquired by the act complained of.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 910–916; Dec. Dig. ☞304; Injunction, Cent. Dig. §§ 92, 94; Dec. Dig. ☞44.]

2. INJUNCTION ☞187 — DISSOLUTION — AWARD OF DAMAGES—PROOF.

In dissolving an injunction against the execution of a judgment, the court may award the defendant statutory damages, under article 304 of the Code of Practice, without proof of such damages; but there is no authority for rendering judgment for damages without proof of them, on the dissolution of any other than an injunction restraining the execution of a judgment, nor for rendering judgment for any other than the statutory damages, without proof.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 398, 406, 407; Dec. Dig. ☞187.]

3. INJUNCTION ☞186—DISSOLUTION — DAMAGES FOR ATTORNEYS' FEES—PROOF.

In a judgment dissolving an injunction on the face of the pleadings, damages for attorneys' fees should not be awarded the defendant on his reconventional demand made in the rule to dissolve, submitted without the introduction of any evidence, and decided upon no other proof of the defendant's obligation for attorneys' fees than the judge's observation of the proceedings conducted before him and his expert knowledge of the value of the legal services rendered.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 397, 399–405; Dec. Dig. ☞186.]

Appeal from Civil District Court, Parish of Orleans; Fred 'D. King, Judge.

Action by the Whitney-Central National Bank and others against James B. Sinnott and others. From judgment for defendants, plaintiffs appeal. Amended and affirmed, and cause remanded.

Dinkelspiel, Hart & Davey, of New Orleans, for appellant Metropolitan Bank. Foster, Milling, Brian & Saal and McCloskey & Benedict, all of New Orleans, for other appellants. Armand Romain, Lyle Saxon, and Charles J. Theard, all of New Orleans, and E. N. Pugh, of Donaldsonville, for appellees Sinnott Heirs. P. M. Milner, of New Orleans, for appellee J. B. Sinnott.

## Statement of the Case.

O'NIELL, J.  The plaintiffs, Whitney-Central National Bank, Hibernia Bank & Trust Company, Metropolitan Bank, and German-American National Bank, have appealed from a judgment rendered against them on a rule, dissolving their writs of injunction and condemning them to pay attorneys' fees as damages for their illegal resort to the writs. The defendants, James B. Sinnott and his sons and daughters, have answered the appeal, praying for an increase of the judgment for damages for their attorneys' fees.

The principal demand is for a judgment against James B. Sinnott, for $215,155.86 with interest and attorneys' fees in favor of the Whitney-Central National Bank, for $26,000 with interest and attorneys' fees in favor of the Hibernia Bank & Trust Company, for $35,000 with interest and attorneys' fees in favor of the Metropolitan Bank, and for $50,000 with interest and attorneys' fees in favor of the German-American National Bank. The action is based upon the alleged obligations of a corporation styled Smith Bros. Company, Limited, which are evidenced mainly by numerous promissory notes made by the corporation and indorsed by J. B.

Sinnott and evidenced partly by drafts and overdrafts of the corporation, all of which indebtedness is alleged to be secured by a continuing guaranty on the part of J. B. Sinnott. With these demands against James B. Sinnott, an action is brought against him and his sons and daughters and against Charles J. Theard (referred to as a stakeholder), demanding that a certain transfer of property by J. B. Sinnott to his sons and daughters be decreed a mere simulation, and in the alternative, that, if it be not simulated, it be declared fraudulent and be annulled.

In support of their action en declaration de simulation and of their alternative revocatory action, the plaintiffs allege that Smith Bros. Company, Limited, carried on a wholesale grocery business in New Orleans for a number of years; that James B. Sinnott was president of the corporation and was reputed to own a majority of its stock; that, according to the terms of its charter, no business could be transacted by the board of directors without the presence of Mr. Sinnott or his capital stock; that he was reputed to be worth $1,000,000 or more, and had secured the company's indebtedness by his personal indorsement and guaranty for years past and during the existence of the community of acquêts and gains between him and his wife, who died on the 14th of May, 1912, at which time the community owed a contingent liability on account of these indorsements of $500,000 or $750,000, or perhaps more; that, if the community had been then liquidated and Smith Bros. Company, Limited, forced to pay the debts then due, the community would have been forced to pay perhaps the full amount for which it was endorser or guarantor, but that there was no liquidation of the community at that time; that plaintiffs did not force Smith Bros. Company, Limited, to settle the indebtedness then due, but that they and other banks continued to carry the indebtedness of

136 LA.—4

the corporation with the indorsement or continuing guaranty of J. B. Sinnott.

The petition alleges that it. has developed recently that Smith Bros. Company, Limited, is hopelessly insolvent, and an application has been made to the federal court to have the company adjudged a bankrupt; that, from all indications, only a small proportion of the company's debts will be paid from a distribution of its assets; and that J. B. Sinnott has not now in his possession sufficient property or effects to pay his indebtedness to the plaintiffs.

It is alleged that Mrs. Sinnott bequeathed the use of her entire estate to her husband, J. B. Sinnott, and the ownership to her six children, namely, Mrs. Mollie S. Holland, Miss Emma Sinnott, Charles J. Sinnott, Mrs. Ella Sinnott Vallon, wife of Raoul Vallon, James B. Sinnott, Jr., and Henry Lee Sinnott; that the will was admitted to probate, and James B. Sinnott, being named as the testamentary executor qualified in that capacity; that an inheritance tax due upon the property was paid; that all of the heirs, being of age, joined in a petition with their father and had him discharged from the executorship and relieved of all liability as executor, and they then accepted the succession, alleging that all of the property of which their mother died possessed was community property; that J. B. Sinnott was thus sent into possession of all the property, as the owner of one half and usufructuary of the other half under the will; that he thus held and administered the property, treated it as his own with the knowledge, consent, and acquiescence of his children; and that, upon the faith of his possession and reputed ownership, he secured credit from these plaintiffs.

It is alleged that, within the year preceding the filing of this suit, and since his indebtedness to the plaintiffs accrued, J. B. Sinnott has, to the great prejudice and in-

jury of petitioners, disposed of certain of the property which he had received under the will of his wife to his children above named; that the plaintiffs have not yet ascertained the exact amount of property transferred nor exactly what it consists of, but that it consists of stocks, bonds, and other choses in action; and that petitioners have been informed, and aver, that J. B. Sinnott is attempting to transfer this property under the pretense that he desires to restore to his children the amount of the property. It is alleged that at least one-half of the property belongs to J. B. Sinnott, and, if the entire property is not subject to his debts, his usufruct of the portion owned by his children is an asset of J. B. Sinnott, and, like the property of which he has the full ownership, is the common pledge of his creditors, and the disposition or attempted disposition of it is of great and irreparable injury to the plaintiffs. The petition recites that the plaintiffs believe and aver that, unless J. B. Sinnott is restrained from further disposing of property to his children, and unless they are enjoined from receiving from him and from disposing of the property which they have already received, it will be placed entirely beyond the reach of the creditors of J. B. Sinnott pending this action.

It is alleged that the plaintiffs have been informed and believe that, at the time of the death of J. B. Sinnott's wife, he or the community existing between them owned a large quantity of real estate, and stocks, and perhaps bonds, of the following named companies: Ponchatalaway Land & Improvement Company, French Opera, Hull Copper Mine, Petrolithic Good Roads & Development Company, American Land Company, Banc Atlantida, Pan-American Life Insurance Company, New Orleans Land Company, Golden Ranch Land & Drainage Company, Alluvial Land Company, Realty Realization Company, Colusa Leonard Extension Copper Company, New Orleans Board of Trade, Wireless Liquidating Company, American Railway Mail Device, Whitney-Central National Bank, and the Hibernia Insurance Company—and stocks and bonds perhaps in other companies which have not come to the knowledge of the plaintiffs.

The petition recites that Charles J. Theard, an attorney at law, representing one or more of the children of J. B. Sinnott, defendants herein, is holding certain stocks, bonds, money, or choses in action, as the property of certain of the parties named, in trust and under certain transactions by which the property was transferred, and that he should be made a party defendant and be required to retain the property as a stakeholder or turn it over to the court and be relieved from this suit.

The plaintiffs allege that they fear and believe that, during the pendency of this suit, J. B. Sinnott will transfer to his children or to some other persons all of the property belonging to him or to the community which existed between him and his wife, and that his children will transfer or dispose of the property which they have already received from their father.

That part of the prayer of the petition, in the exact language and terms of which the order and writs of injunction were issued, is in these words:

"Petitioners further pray for a writ of injunction duly issued out of this honorable court, directed to J. B. Sinnott and to each of the other defendants and to Charles J. Theard, restraining and prohibiting the said Sinnott from in any manner disposing of any property now in his possession, whether held in his own right or as usufructuary or in any other manner, and Mrs. Mollie S. Holland, Miss Emma Sinnott, Charles T. Sinnott, Mrs. Ella Sinnott, wife of Raoul Vallon, Raoul Vallon, James B. Sinnott, Jr., and Henry Lee Sinnott, from disposing of any property received by them from their said father on account of the inheritance of their said mother or as belonging to their said mother, or from receiving any further property from their said father, J. B. Sinnott, and the said Charles J. Theard from disposing of or turning

over to the said heirs any portion of the property now in his possession; and that they be thus restrained until the further orders of this honorable court."

After praying for judgment against J. B. Sinnott in favor of each plaintiff for the debt alleged to be due, and reverting to the writs of injunction and the action en declaration de simulation and alternative revocatory action, the prayer concludes thus:

"And, on final trial, they further pray that the writs of injunction herein sued out be perpetuated; that all the property transferred by the said J. B. Sinnott to his said children on account of the inheritance of their said mother, or otherwise, be declared simulated, illegal, and null, and, in the alternative, fraudulent and made in fraud of the rights of creditors, injurious to them, and therefore should be set aside and the said property subjected to the payment of the debts of the said J. B. Sinnott, and especially of the debts of your petitioners herein; and that your petitioners be recognized as having the first privilege upon all the property, the sale of which is thus annulled, and that all of said property be seized and sold to satisfy the said judgments herein rendered, with costs and attorneys' fees, and that the same be paid by preference and priority out of the funds thus realized."

The writs of injunction were issued by Judge Porter Parker on a bond of $25,000.

Charles J. Theard filed an exception to the effect that the suit against him is an attempt to subject him to a process not authorized by law and that the petition did not disclose any right or cause of action against him.

James B. Sinnott filed exceptions to the petition: (1) That it was vague and indefinite; (2) that it contained a misjoinder of parties plaintiff; and (3) that it disclosed no cause of action.

Thereafter, on motion of J. B. Sinnott, a rule was issued by Judge Fred D. King, directed to the plaintiffs, ordering them to show cause why the writs of injunction should not be dissolved and the plaintiffs condemned to pay $2,000 damages as attorneys' fees, on several grounds; the substance of them being that there was no authority in law or equity for issuing the writs. A sim-

ilar rule was issued on the motion of Mrs. Mollie S. Holland, Miss Emma Sinnott, Charles J. Theard, Henry Lee Sinnott, and James B. Sinnott, Jr., elaborating the reasons urged by J. B. Sinnott for demanding the dissolution of the writs, and praying for $5,000 damages for attorneys' fees; and another such rule was issued at the instance of Mrs. Ella Sinnott Vallon, praying for $5,000 damages for her attorneys' fees.

Several months after these rules were served upon the plaintiffs, one of them, the Whitney-Central National Bank, filed a supplemental petition, in pursuance of a reservation made in the original petition, alleging that additional debts due to this bank had matured since the filing of the suit, amounting to $133,104.33, and making a total of $215,155.86 due.

It is alleged in the supplemental petition that this petitioner received information, after filing the suit that, on the 20th of March, 1913, by act before F. C. Marx, notary public, registered in Book 259, folio 33, James B. Sinnott purported to transfer to his children, named in the original petition, an undivided half of four lots of ground in the city of New Orleans, described in the supplemental petition, and that he renounced his usufruct on the other undivided half of this property. It is alleged that this pretended transfer, and especially the renunciation of the usufruct, was without any consideration; that J. B. Sinnott practically owned all of the property mentioned in the act, owning one half outright and having the usufruct of the other half interest; that, at the time the act was passed, J. B. Sinnott had possession of and was pledging and using, with the consent of his children, the securities mentioned in the act; that they had been pledged or disposed of by him, and therefore the children did not have them to deliver to him when the act was passed. (It may be inferred from this, although it is not alleged, that the act

before Marx, notary, recites that the transferees of the property described gave certain securities in exchange.) It is alleged that this act was a mere subterfuge for the purpose of placing the property into the possession of the sons and daughters of J. B. Sinnott and out of the reach of his creditors, to the great prejudice and injury of the petitioner; and, as in the original petition, that it is a mere simulation, and, if not a simulation, a fraud upon the creditors of J. B. Sinnott, and that it should be avoided and set aside and the property subjected to the indebtedness due to petitioner. The supplemental petition concludes with a prayer for the perpetuation of the writs of injunction and for the annulment of the transfer complained of.

Although the plaintiffs' right to the writs of injunction depends upon the allegations of the original petition, the averments of the supplemental petition would not materially affect the situation as originally presented.

Whether it has or has not any significance, it is remarkable that, although the date of each of the 22 notes described in the supplemental petition is given, there has been no mention of the date of any of the 37 notes originally sued on. All of the notes described in the supplemental petition bear date subsequent to the death of Mrs. Sinnott; and they all bear date subsequent to the act before Marx, notary, except two which appear to antedate the transfer by only three days. There is no demand that any of the defendants be held liable personally for any debt, except J. B. Sinnott, whose obligations are alleged to be only as an indorser or as surety for Smith Bros. Company, Limited.

The supplemental petition was verified by the affidavit of the president of the bank on the 14th of January, but was not filed until the 15th of April, 1914. Thereupon the defendants filed exceptions of no cause or right of action and renewed their motions to dissolve the writs of injunction.

In the judgment dissolving the writs of injunction, damages for attorneys' fees in the sum of $200, was allowed James B. Sinnott, a like sum was allowed to Mrs. Ella Sinnott Vallon, and the same amount to Mrs. Mollie S. Holland, Miss Emma Sinnott, C. J. Sinnott, H. L. Sinnott, and J. B. Sinnott Jr., jointly. The injunction has remained in force under the plaintiffs' suspensive appeal.

## Opinion.

[1] The foregoing review of the pleadings, upon which the writs of injunction are to be maintained or dissolved, is given at considerable length and in detail, not so much on account of the large sums involved, but because the proceedings are indeed very unusual, if not altogether novel.

The plaintiffs rely upon article 303, C. P., which provides:

"Besides the cases above mentioned, courts of justice may grant injunctions in all other cases when it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit, from dilapidating the same, or from doing some other act injurious to the other party."

There is no property in dispute in this case. Therefore if the writs of injunction are authorized by article 303 of the Code of Practice, it is not to preserve property in dispute, or to prevent the defendants from dilapidating property in dispute, but to prevent them from doing some other act injurious to the plaintiffs.

In a somewhat similar case (McAdam v. Rainey et al., 33 La. Ann. 108), where a judgment creditor sued to revoke a sale of movable property on the ground that it had been made in fraud of the creditor's rights, and enjoined the vendee from disposing of the property during the pendency of his revocatory action, this court, through Chief Justice Bermudez, said:

"The petition contains allegations that the sale was fraudulent and simulated. It does not

aver that the defendant, Rainey (the vendee), proposes to dispose of said effects during the pendency of the suit; that he is insolvent; that, if he disposes of said effects, he will part with the proceeds of sale; or that he will do any act, which, if consummated, will prove injurious to the plaintiff.

"It is settled that one who bases his right to an injunction on article 303, C. P., must show, either that he has a right of property in the thing, or that the act sought to be enjoined would, if done, give him a right to damages."

Paraphrasing the language quoted, the petition in this case contains allegations that the transfer was fraudulent and simulated. It does not aver that the defendants, sons and daughters of J. B. Sinnott, propose to dispose of the property received from their father during the pendency of this suit; that, if they dispose of it, they will part with the proceeds of the sale; or that they will do any act which, if consummated, will prove injurious to the plaintiffs. The plaintiffs do not show that they have a right of property in the object of the transfer sought to be annulled, or that the act enjoined would, if consummated, give them a right to damages. They do not allege that the transferees in the act complained of were in bad faith, or that the transferees knew that the transferor was insolvent or knew that he had not sufficient money or property to pay his debts. R. C. C. arts. 1978 and 1979.

The case of Garlick v. Reece, 8 La. 101, relied upon by the plaintiffs to sustain their right to these writs of injunction, is not at all analogous to the present case. There the plaintiff enjoined the execution of a judgment which had been rendered against him, on the allegation that he had paid a part of the debt before the suit was entered. He alleged that the judgment was obtained against him by fraud, but the facts disclosed in his petition did not constitute fraud. This court said that, pending an action to annul a judgment on allegations of fraud, an injunction is the proper remedy to prevent the judgment creditor from executing his fraudulent judgment. The injunction was dissolved in that case on the face of the pleadings, because the allegation of fraud was only an erroneous legal conclusion drawn by the plaintiff from the facts stated in his petition.

In the case of Stein v. Gibbons and Irby, 16 La. 103, also relied upon by the plaintiffs as a precedent for their proceeding by injunction, Stein enjoined the sheriff from selling the property of his debtor, Gibbons, which had been seized under execution of a fraudulent judgment which had been obtained by Irby against Gibbons without any consideration. The difference between that case and the one before us is that the plaintiffs here admit and aver that the transfer complained of has already taken place, and they seek to enjoin the vendor from making any transfers of other property and to enjoin his vendees (who are not the plaintiffs' debtors) from transferring the property which they received in the sale complained of. If, in the case cited, the sheriff had completed his sale under execution of the fraudulent judgment by selling Gibbons' property to Irby, and if Stein had thereafter attempted to enjoin Gibbons from transferring any more of his property and had sought to enjoin Irby from disposing of the property bought at the sheriff's sale, the case would have been very similar to the present situation; and we have little doubt that the writs of injunction would have been dissolved on the face of such pleadings.

The facts disclosed in the other cases referred to and relied upon by the plaintiffs as authority for their proceeding by injunction are so very different from the facts disclosed in the petitions before us that they need not be mentioned.

The most pertinent decision to which we have been referred is in the case of the United States v. Smith, 7 La. Ann. 185. The government had obtained a judgment against John Kelty Smith for a large sum of money, in the District of Columbia, under a system

by which, no execution having issued within a year and a day, the judgment had become dormant and the creditor had only a right of action on the debt. Suit was brought upon the original debt in our state court. The petition alleged that the debtor was conducting his banking and brokerage business in the city of New Orleans in the name of his son, John Chandler Smith; that the debtor had placed all of his property, consisting of money in bank, bills, notes, and stocks, which were easily convertible, in the name of his son, John Chandler Smith, and that the debtor had no other property; and "that John Chandler Smith, being a party to these frauds and simulations, with the design and intent to defraud the plaintiff, had (has) become personally liable in the amount of the effects thus standing in his name." In aid of the action to annul—or to have decreed simulated —the transactions between the debtor and his son, the plaintiff caused writs of sequestration and injunction to issue to prevent the disposal of the bonds, notes, etc., alleged to belong to the debtor but standing in the name of his son, during the pendency of the suit. The writs of injunction were dissolved in the district court, and, affirming the judgment, this court, through Chief Justice Eustis, said:

"No precedent, no authority, has been adduced in support of these proceedings; nor has even an attempt been made at the bar, within the knowledge or recollection of any of us, to institute them; nor is there any statute under which they are even indirectly sustained. Proceedings against an absconding debtor, for a general sequestration of his effects, at the instance and under the affidavit of three of his creditors, are authorized by statute. We have, also, a remedy against the property of absentees under a foreign attachment process. But where the debtor is present and subject to the process of the court, there is no warrant in the law, that we ever heard of, for taking from his possession and control his property in limine litis, at the instance of a plaintiff who sues him for the recovery of a debt, and for the purpose of subjecting the property to the satisfaction of the judgment which the creditor seeks to obtain. Supposing therefore that this property belongs, in fact, to John Kelty Smith, and is in his possession, where is the power given to the creditor, under any process of the court, to disturb him in his peaceable possession of it, and to arrest, at once, without notice and without a hearing, the business by which his livelihood is obtained? The plaintiffs, had they a judgment, might have the remedy of judgment creditors against the property of their debtor; but they have no judgment, in a legal sense, against John Kelty Smith, and they have, accordingly, instituted their suit to obtain one. * * * Indeed, this question, by being stated, answers itself. What would be thought of a plaintiff who should begin his suit on a promissory note against his debtor, by a general sequestration of the debtor's property? Such a proceeding is repugnant to all our ideas of the rights and remedies of litigants under our laws."

The foregoing opinion was rendered prior to the passage of the Act No. 157 of 1868, p. 202, amending article 240 of the Code of Practice, so as to authorize an attachment of the debtor's property: (4) When he has mortgaged, assigned, or disposed of, or is about to mortgage, assign, or dispose of it, or some part of it, with intent to defraud his creditors or to give an unfair preference to some of them; or (5) when he has converted or is about to convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors. Even though there was then no statutory remedy, this court would not sanction an equitable remedy by injunction. There has been no departure from the doctrine stated in the syllabus, viz.:

"Where the debtor is present and subject to the jurisdiction of the court, his creditor cannot, simultaneously with an action for the recovery of his debt, have a general sequestration of his property, nor restrain him by injunction, in the exercise of the rights of ownership."

Twenty years later, the foregoing opinion was referred to approvingly, in the case of McKee v. Griffin et al., 23 La. Ann. 420, viz.:

"In the case of United States v. Smith, 7 La. Ann. 187, where it was alleged that property of the defendant was fraudulently covered by title in the name of his son, an injunction was taken out, on affidavit of the plaintiff that defendant had no other property, and that there was reason to fear the property would be disposed of to the injury of the plaintiff. The injunction was dissolved on the ground that there was no authority or precedent for such a proceeding. In the case of Talamon et al. v.

Ytasse, 4 Rob. 462, and in the case of Barriere v. Feste, 9 La. Ann. 536, the same ruling prevailed."

Counsel for the plaintiffs contend that they had not a remedy by attachment under paragraphs 4 and 5 of article 240 of the Code of Practice (as amended by the Act No. 157 of 1868, p. 202), under the allegations that their debtor had disposed of his property with intent to defraud his creditors. As to the stocks, bonds, and choses in action, they ·overlook or ignore the Act No. 46 of 1886, p. 65, amending *article 398 of the Code of* Practice, and they overlook their revocatory action, when they say in their brief:

"Although Mr. Sinnott may have committed acts which would justify an attachment, yet the transfer of a great deal of this property having been evidenced by a notarial act, regular in form and duly recorded, it evidenced a real transaction, and a creditor is not permitted to seize directly in such case, but must resort to the revocatory action. If he seizes directly, his proof that the transfer was made in fraud of the rights of creditors does not avail. He· must establish a simulation, without which his attachment would not be sustained."          \

In support of this proposition, counsel for plaintiffs refer us to the decisions rendered in the cases (in which there was no revocatory action) of McAdam v. Soria, 31 La. Ann. 862, Redwitz v. Waggaman, Sheriff, 33 La. Ann. 26, Raymond v. Froeba, 35 La. Ann. 376, and Johnson v. Kingsland, etc., 38 La. Ann. 248, in which it was held that:

"Where an alleged sale is a mere simulation, it may be treated as a nullity, and the thing transferred by the pretended sale may be directly seized or attached by a creditor' of the vendor. But where there is a real sale, however fraudulent, the creditor cannot seize the property in the possession of the purchaser, but must resort to the revocatory action."

These decisions, however, were all rendered before the passage of the Act No. 46 of 1886. The last of them was argued and decided at the January term, 1886. Thereafter, in Lahitte v. Frere, Sheriff, 42 La. Ann. 864, 8 South. 598, this court recognized the amendment of article 398 of the Code of Practice by the Act No. 46 of 1886, and held that a creditor could, on proper allegations, attach personal property in the possession of the vendee of the debtor, and could, in answer to a third opposition by the vendee claiming ownership, aver and prove the title to be fraudulent. It was held that a resort to the revocatory action was not necessary in such case any more than in a case of simulation.

The contention that the plaintiffs had no remedy by attachment of the movable property (upon proper allegations, and even without a revocatory action) is therefore unavailing. The argument did not avail the plaintiff in the case of United States v. Smith, decided before the passage of the act of 1868, when it was true that the plaintiff had no remedy by attachment of movable property.

In the present case, however, the plaintiffs have brought a revocatory action. But there is no allegation, in either the original or supplemental petition, that the debtor, J. B. Sinnott, *has threatened or intends or is about* to dispose of other property than that which was transferred to his sons and daughters by the public act passed and recorded nearly five months before this suit was filed; nor is it alleged that the transferees have threatened or intend or are about to make any further disposition of the property which they acquired from their father. Whether the plaintiffs' allegation, that they verily believe and fear that their debtor will dispose *of other property to their prejudice during* the pendency of this suit, does or does not give them a right to a writ of attachment, it does not give them an equitable remedy by injunction. High on Injunctions (3d Ed.) p. 251, announces the well-recognized doctrine:

"It is a well-established rule that equity will not entertain jurisdiction to restrain a debtor from disposing of his property at the suit of a creditor whose demand is not yet reduced to judgment and which constitutes no lien on the property. Until his rights are fixed and established by a judgment, a creditor is entitled to no

control over his debtor's property, and he will not be allowed to question its disposition or its management."

Mr. High announces only the equity rule, without reference to a remedy at law, such as our writ of attachment. Such a writ in the present case would have required of the plaintiffs a bond of nearly, if not quite, $350,-000; that is, fourteen times as large in amount as the bond which was furnished for the writs of injunction. The Code of Practice provides various conservatory writs and remedies for the different exigencies; and we have no authority—and indeed no reason—to permit any one of these remedies to be substituted for another, especially where the substitution lessens the bond required.

[2-4] Our conclusion is that the writs of injunction were issued improvidently and that they were properly dissolved on the allegations of the plaintiffs' petition. We have now to determine whether the district court was authorized to award damages to the defendants for their attorneys' fees for dissolving the writs, in a judgment rendered on a rule submitted without the introduction of evidence and decided upon no other proof of the obligation or of the value of the services than the proceedings disclosed.

Under article 375 of the Code of Practice, a defendant is not permitted to assert a demand in reconvention unless it is connected with or incidental to the main demand, or unless the plaintiff resides out of the parish of the defendant's domicile. Act No. 50 of 1886 amended this article by adding:

"And provided further, that in all cases of arrest, attachment, sequestration, provisional seizure and injunction the defendant may, in the same suit by reconventional demand, recover from the plaintiff the damages he may have sustained by the illegal resort to such writ."

Before the enactment of this statute, damages caused by an illegal resort to a conservatory writ could not be successfully claimed in a reconventional demand, except in the case of an injunction arresting the execution of a judgment for a sum of money, in which case, under article 304 of the Code of Practice, the surety on the injunction bond is a party plaintiff, and judgment may be rendered against him and his coplaintiff, on the defendant's reconventional demand, at the same time that judgment is rendered dissolving the injunction. The statute of 1886, however, did not change the law with regard to a surety on a bond given to obtain any of the conservatory writs.

Article 304 of the Code of Practice declares that, in a judgment dissolving an injunction against the execution of a judgment, the judge shall, at the same time, condemn the plaintiff and his surety, jointly and severally, to pay the defendant interest at 8 per cent. per annum on the amount of the judgment (the execution of which was enjoined) and not more than 20 per cent. as damages, unless damages to a greater amount be proved. In the case of Meaux v. Pittman, 35 La. Ann. 361, it was said that the statutory damages authorized by this article of the Code of Practice are punitory in their character. Hence, from the nature of these damages, and from the very language of the law allowing them, the court is not authorized—even in dissolving an injunction against the execution of a money judgment—to award the defendant any other than the statutory damages, unless other or actual damages be proved.

We have not been referred to any precedent, nor have we found any authority, for holding that a judge's knowledge that an attorney has obtained the dissolution of a writ of injunction, his observation of the nature and extent of the proceedings, and his expert knowledge of the value of the services rendered, are sufficient proof upon which to render a judgment for damages for attorneys' fees.

"In the matter of assessing fees," it was said in the case last cited, "this court is expected to

exercise its judgment, guided, but not controlled, by the testimony."

In that case, however, the services of the attorney had been rendered in another court than that in which the suit was instituted on the injunction bond to recover the fees for dissolving the writ. The only question there presented was whether the defendant in the injunction suit could recover his attorney's fee for dissolving the writ without proof that he had actually paid it. It was held that it was sufficient that the obligation or liability for the fee had been incurred by the defendant in injunction.

The other case cited by the counsel for the plaintiffs is not pertinent to the question under consideration, because there the attorneys' fees were not incurred in the dissolution of a conservatory writ, nor were they claimed in a reconventional demand, or even in the same jurisdiction in which they had been rendered.

The decision relied upon by the defendants' counsel (Hanson Co. v. Mestayer, 130 La. 688, 58 South. 511) does not sustain their reconventional demand in this case. In the case cited, the demand for damages for attorneys' fees was rejected because the writ of injunction was dissolved as a mere consequence of the successful defense of the suit upon its merits.

"As to the other damages," it was said, quoting Lemeunier v. McClearley, 41 La. Ann. 412, 6 South. 338, "it is well settled that the dissolution of an injunction is prima facie evidence that the defendant has sustained damages. And we think the evidence adduced shows that the defendant in this case has sustained damage to the extent of $50."

Our conclusion is that it was never contemplated that actual, compensatory damages, such as attorneys' fees incurred in dissolving a conservatory writ, should be allowed on a reconventional demand made by motion or suggestion in a rule to dissolve the writ, submitted without the introduction of any evidence and decided without any other proof of the obligation than the judge's observation of the proceedings conducted before him and his expert knowledge of the value of the services rendered.

The principal demand in this suit against James B. Sinnott, the action en declaration de simulation and the alternative revocatory action, have not been put at issue. The dissolution of the writs of injunction is prima facie evidence that the defendants have sustained damages. They will have an opportunity, therefore, to renew their reconventional demand for damages and to sustain it with proper evidence.

For the reasons assigned, the judgment appealed from is amended by dismissing the defendants' reconventional demand for damages for attorneys' fees, as in case of nonsuit, reserving to them their right to assert the demand against the plaintiffs by way of reconvention in this suit or against the plaintiffs and their surety in an action on the injunction bond; and, as thus amended, the judgment appealed from is affirmed, and the case is remanded to the district court to be proceeded with upon its merits. The appellees are to pay the cost of appeal.