LAND, J.
During the year 1919 the taxes on the lands of defendant company situated in six different parishes of the state were not paid, and said lands were sold at tax sale, either to private individuals or were adjudicated to the state. Plaintiff, being a creditor in a large sum of defendant company, and the indebtedness to him being secured by mortgage on said lands, paid said taxes, - amounting to the sum of $21,983.42, in order to redeem said property; the redemptions being taken in the name of defendant company.
Alleging these facts and asserting his subrogation by operation of law to the rights of the state in and to the tax liens and privileges securing the payment of said taxes, plaintiff obtained an order for the seizure and sale of said lands at public auction to the highest bidder for cash without appraisement, claiming the right to be paid by preference a-nd priority out of the proceeds of the sale of said property.
On June 22, 1921, defendant company filed its answer, admitting that plaintiff had paid said taxes and redeemed said lands, as per tax redemption certificates and receipts attached to the petition, and submitting to the court the legal effect thereof.
Plaintiff then filed a rule upon defendant company to show cause why judgment should not be rendered in his favor upon the face of the admissions contained in the answer of defendant company. This rule was made absolute, and judgment for plaintiff was read and rendered in open court on June 24, 1921, and said judgment was signed in open court June 30, 1921, On November 5, 1922, Rod A. Demme, alleging that he is the lessee of all the oil and mineral rights on a large portion of the lands seized by plaintiff under his judg *265 ment, and that he has complied with all of his obligations under said lease, obtained a preliminary writ of injunction, restraining the sheriff of each of the six parishes in which said lands are situated from proceeding any further with the advertisement or sale of any of the property alleged to be covered by said mineral lease.
Demme alleges in his petition for injunction that Timken, plaintiff in this suit, took notice of and was bound by the rights granted to Demme by an act under private signature entered into in the city of New Tork on, June 3, 1919, and that the judgment rendered in fávor of Timken, even if valid could not prime the .rights of Demme acquired anterior to the date of said judgment, to the knowledge of Timken. Demme attacks the validity of this judgment on various grounds, charging specifically collusion and conspiracy between Timken and the Wisner Estates, Inc., to bring about the sale of the lands described, so as to clear them of the rights of petitioner in injunction, and so as to cheat and defraud him of the benefits to which he is entitled under his contract of lease, and denies that the legal effect of the payment of taxes and the redemption of these lands by Timken operated by law as a subrogation to the tax liens and privileges on said property in favor of the state.
Plaintiff in this cause, defendant in injunction, filed a motion to dissolve said writ on the following grounds:
1. That the allegations of plaintiff’s petition are so vague and indefinite 'that they cannot support the issuance of an injunction.
2. That the allegations of said petition are inconsistent, in that plaintiff in injunction virtually admits the correctness of the judgment and at the same time attempts to attack same.
3. And in the alternative, that the petition does not set forth a ground for an injunction, nor does it disclose any right or cause of action.
We find it necessary to consider only the alternative plea of no right or cause of action, as, in our opinion, it is well taken, and disposes of the case. ■ .
An inspection of the so-called lease of date June 3, 1919, and upon which plaintiff relies as the basis of the rights asserted by him in the injunction proceeding, discloses the fact that said agreement is purely of a tentative character. It provides: '
“1. The parties of the first, second and third parts hereby jointly and severally agree and undertake to deliver to, or cause to be delivered, free of charge, to the party of the fifth part (Rod A. Demme), or his nominee or assigns, within sixty (60) days from the date hereof, duly executed good and valid lease or sublease, as hereinafter provided, to the oil and gas rights in and to thirty-one and one-half (31%) quarter sections of 160 acres each, amounting to 5,040 acres, forming a part of a 20,000 acre tract hereinafter described.”
Section 111 of this agreement contains provisions similar to those included in section 1, relative to the leases to be executed on the lands described in said section. Section 1 enumerates • the terms and conditions to be contained in the leases to be executed within 60 days from the date of the agreement o.f June 3, 1919.
In other words, this agreement is a mere memorandum of the description of lands, terms, and conditions to be embodied later on in formal contracts of lease to be reduced to writing and to be signed by the' contracting parties. That such was the intention of the contracting parties is made evident by the plain and unmistakable language of the agreement itself. Until such leases were executed, it is clear that there was no binding contract between the parties.
Where it Ijas been agreed that the contract shall be reduced to writing, it is not complete until the writing is made and signed, and, until it is actually written and signed by all parties, either may retract. In re Woodville, 115 La. 810, 40 South. 174, citing numerous authorities.
*267 Until the writing is drawn up and signed, where such is the intention of the parties, the contract is inchoate and incomplete, and either party, before signing, may decline to go further and refuse to consummate. Laroussini v. Werlein, 52 La. Ann. 424, 27 South. 89, 78 Am. St. Rep. 350.
As plaintiff in injunction acquired no lease under the skeleton agreement of June 3, 1919, and as he has failed to allege in his petition the existence of formal leases executed and signed by all of the parties, as contemplated by said agreement, he has failed to set forth a right or cause of action, and the writ of injunction was therefore properly dissolved.
Defendant in injunction in his motion to dissolve said writ prays for damages in his favor in the sum of $2,500 attorney’s fees, and 20 per cent, statutory damages on the amount of the judgment herein enjoined.
The injunction in this case was dissolved upon the face of the papers and without any proof as to the value of the services rendered by counsel for defendant in the dissolution of the writ. It is not alleged in this motion that defendant had paid any attorney’s fees, or that he had incurred an obligation to pay them. The sum of $500 was allowed for' actual, compensatory damages as attorney’s fees, and $500 as statutory damages under article 304 of the Code of Practice.
We are of the opinion that the allowance of damages for attorney’s fees, under the circumstances, is erroneous. In the case of Whitney-Central National Bank v. Sinnott, 136 La. 95, 66 South. 551, we said:
“Our conclusion is that it was never contemplated that actual, compensatory damages, such as attorneys’ fees incurred in dissolving a conservatory writ, should be allowed on a reconventional demand made by motion or suggestion in a rule to dissolve the writ, submitted without the introduction of any evidence and decided without any other proof of the obligation than the judge’s observation of the ■ proceedings conducted before him and his expert knowledge of the value of the services rendered.”
This decision is approved in the' case of Hunt v. Hill, 138 La. 589 and 590, 70 South. 522, and is differentiated from the cases there cited. In that case the court said:
“These decisions can all be reconciled with the decision in Whitney-Central National Bank v. Sinnott et al., 136 La. 95, 66 South. 551, where we refused to estimate the attorney’s fees for dissolving a writ of injunction, in the absence of an allegation or proof that the defendants had paid any attorney’s fees or that they had incurred an obligation to pay them, as in the case of Meaux v. Pittman, 35 La. Ann. 361.”
A mortgage creditor, (Who has paid taxes on the property hypothecated, is subrogated by operation of law to the privilege of the taxing authorities. Section 89 of Act 170 of 1898, providing for the conventional subrogation of any person who may pay the taxes of another, is not inconsistent with the legal subrogation, which takes place for the benefit of a creditor who pays another, whose claim is preferable to his by reason of privilege or mortgage. C. C. art. 2161; Abbott v. Heald, 128 La. 718, 55 South. 28.
A mortgage creditor may redeem from a tax sale the property on which his mortgage rests, either in his own name, or in the name of his debtor, the former owner. Montgomery v. Burton, 31 Ann. 330 ; State v. Register of Conveyances, 113 La. 98, 36 South. 900.
Plaintiff in this suit has obtained a money judgment against defendant on petition filed, and after due citation and hearing. On the dissolution of an injunction directed against the execution of a money judgment, the judge may allow damages to the amount of 20 per cent, on the judgment enjoined without proof. Williams v. Close, 14 La. Ann. 737 ; Rivet v. Murrell Planting & Mfg. Co., 121 La. 201, 46 South. 210, 126 Am. St. Rep. 320 ; Betts v. Mougin, 15 La. Ann. 52 ; Mason v. Poulallier, 10 La. Ann. 418.
*269 We are of the opinion that the sum of $1,-000 should be allowed as damages under article 304 of the Code of Practice, and, for reasons assigned, that the claim of $500 as attorney’s fees should be denied and rejected.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, by disallowing the attorney’s fees, and by increasing the statutory damages from $500 to $1,000, and it is now ordered that said judgment, as amended, be affirmed. Appellant to pay all costs.
ROGERS, J., recused.