### No. 8721.
### Orleans Appeal.

**STEWART CARNAL & CO., LTD., Appellant, v. EUGENE REBOUL & SON.**

(February 2, 1925, Opinion and Decree.)

*(Syllabus by the Court.)*

1. **Louisiana Digest, Obligations—Par. 17.** Where parties contemplate a written agreement, there is no contract until the written agreement is perfected and signed.

Appeal from the Civil District Court, Hon. Hugh C. Cage, Judge.

This is a suit for damages for alleged breach of contract.

Judgment for defendants. Plaintiff appealed.

Judgment affirmed.

Merrick & Schwarz, Herman L. Barnett, attorneys for plaintiff and appellant.

Delvaille Theard, attorney for defendant and appellee.

WESTERFIELD, J. This is a suit for damages growing out of the alleged breach by the purchaser of a contract of sale of 250 bags of coffee. Plaintiff claims to have entered into a verbal contract with defendant through a broker named Feibleman whereby it sold and defendant bought the coffee in August for delivery in October. The defendants admit having agreed to buy the coffee from Feibleman, though without any knowledge of whose coffee they were buying, but assert that immediately after having agreed with Feibleman verbally they were asked to sign a contract with plaintiffs which contained objectionable provisions which they had not agreed to verbally and which they refused to sign. They invoke the legal principle to the effect that where parties contemplate that their agreements shall be reduced to writing there is no contract until the writing is made and signed. Fredericks vs. Fasnacht, 30 La. Ann. 117; In re Woodville, 115 La. 810, 40 South. 174; Timken vs. Wisner Estates, 153 La. 266, 95 South. 711. In the alternative it is contended that the agreement contains a potestative condition.

There was judgment below in defendant's favor and plaintiff has appealed.

Plaintiff is a coffee dealer and defendants are grocers who sell large quantities of coffee. Feibleman, the broker, called defendants on the telephone and solicited an order for coffee, which after agreement upon the number of bags, the price and date of delivery, was given. It was customary for brokers to send a written memorandum to buyer and seller of verbal sales, but the evidence is conflicting as to whether a written contract was customary. In this instance, however, a contract in duplicate was sent defendants bearing the signature of plaintiff with a request for defendants' signature. Defendants refused to sign the contract upon the ground that the contract contained the clause "to be shipped by steamer 'UNADVISED'" and the words "ex ship" and "no arrival no sale".

There was considerable testimony taken in an effort to establish the meaning in the trade under the prevailing custom of the words "ex ship" and "no arrival no sale" but we are unable to appreciate its importance. If the sale was completed by the verbal understanding between the parties as plaintiff insists, there is no pretense that anything was said about the ship or its arrival. If on the other hand it was the intention to reduce the agreement to writ-

ing, as defendants contend, the written agreement in which these phrases alone occur was not signed, hence it is immaterial what it provides. The first inquiry here is what was the intention of the parties with respect to reducing their agreement to writing?

Mr. Reboul testified:

"Q. When he was talking to you about it, did you contemplate or understand that he was to send you a contract and that you were to sign it?
A. When I bought the coffee over the phone from him?
Q. Yes.
A. I said yes, send me down the contract.
Q. Did you tell him that, and did he say he would send it?
A. I says, send me down the contract.
Q. What did he say then?
A. He says, I will mail it."

He also testified that he had considerable experience in buying coffee both "spots" and "futures" and that whenever he bought futures he always signed a contract.

F. R. White, an employee of plaintiff who acted in plaintiff's behalf in this transaction, testified that it was not customary to have signed contracts evidencing the sale of coffee for future delivery and that the broker's memorandum of confirmation was sufficient, but he also said that "when we want to have the thing in more definite form and technical in such a way that in case of any death of any one, or anything like that, we try to get a formal signed contract". When asked whether plaintiffs understood that a written contract was essential to the perfection of the agreement he replied:

"We did not consider it necessary. We would like to get it, but did not consider it necessary. We do that when we cannot get a contract signed by a man, we give it up, because we consider the other part is the contract, and if the buyer of a contract of that sort, and we find it hard to get it out of him, we let it go. Cases of that kind come up every now and then."

Feibleman the broker testified that he did not remember Reboul asking for a written contract. He says that as soon as he made the sale he drew up a memorandum of the agreement in duplicate and sent both drafts to the plaintiff for signature and then to Reboul & Son "for them to return the duplicate signed so that it would then be a legal contract". He says he thinks there is a greater quantity of coffee sold by verbal understanding than by written contract; that he kept after Reboul & Son in an effort to get them· to sign the contract without success, though one of the Rebouls promised him to sign it.

One other witness was examined, Mr. Levy, but his testimony dealt with the custom of the trade and market conditions relative to decline in prices.

The evidence convinces us that whatever may be the custom with reference to verbal sales of coffee by brokers and it is not at all clear, that in this case both parties contemplated a written contract. In the first place, the defendants had no dealings with plaintiff at all until they were asked to sign the contract. They did not know whose coffee they were buying. Feibleman immediately presented a contract to plaintiffs for their signature and obtaining it sent it to defendants to be signed. Plaintiff signed the contract in this case and their employee who signed it for them testified that they try to get contracts signed in all cases but sometimes they do not insist upon it.

The case is clearly with the defendants and for the reasons assigned, the judgment appealed from will be affirmed.