## FIRST FEDERAL SAVINGS & LOAN ASS'N OF SHREVEPORT v. BLANCHARD.

### No. 5971.

Court of Appeal of Louisiana. Second Circuit.

Feb. 7, 1940.

Rehearing Denied March 6, 1940.

Writ of Certiorari Granted April 1, 1940.

Sylvian W. Gann, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

HAMITER, Judge.

The facts of this case are undisputed.

On January 24, 1928, the defendant, Frank A. Blanchard, purchased a tract of land situated in the City of Shreveport, Louisiana, with all improvements thereon, from the Shreveport Mutual Building Association, which is now known as the First Federal Savings and Loan Association of Shreveport, the plaintiff herein. The act evidencing the transaction recited a consideration of $10,000, represented by the purchaser's one note, and stipulated the granting of a special mortgage and the retention of the vendor's lien and privilege on said property to secure the payment of the note.

The mentioned instrument further provided that Blanchard would "pay all taxes assessed against said property, and all premiums of insurance, and should said purchaser fail to pay said taxes or premiums as aforesaid, said Association shall pay the same, the amount of premiums of insurance and taxes so paid to bear interest at the rate of eight per cent per annum from date of disbursement until paid. * * * * * * And to secure the reimbursement and payment of all premiums of insurance, taxes, costs, stock transfer fees, charges and expenses, the said lot of ground and improvements thereon are hereby specially mortgaged and hypothecated unto and in favor of said Association and its assigns, in the sum of $1000.00."

Blanchard, on September 5, 1931, sold a portion of said tract, together with the attendant improvements, to Justin R. Querbes, who, as a part of the sale's consideration, assumed payment of the above described indebtedness of Blanchard with the Association amounting at that time to $9,725.62. The mortgage on the entire property was unaffected by this assumption and sale.

The state, parish and city taxes due for the year 1931 on the part retained by Blanchard were not cared for by him before their delinquency. In December, 1932, the Association paid to the proper taxing officials the sum of $156.93, this being the amount of such delinquent taxes, and obtained certificates of subrogation stating that those officers had transferred and assigned to the Association, and had subrogated the said assignee to, all of the rights, liens and privileges of the City of Shreveport, Parish of Caddo and State of Louisiana for the collection and enforcement of those taxes as the law provides. The certificates were recorded in the office of the Clerk of Court of Caddo Parish, Louisiana, on February 2, 1933, at the instance of said Association and at the cost of $2.25.

On September 27, 1933, the Association paid the sum of $13.95 to the City of Shreveport for delinquent city taxes of 1932 that were due on Blanchard's property. There was no conventional subrogation or assignment of the city's rights and privileges in connection with this payment.

All taxes affecting the portion of the tract acquired by Querbes were paid by him as they became due. Furthermore, his property was released from the operation of the above mentioned mortgage on February 1, 1938, by direction of the Association, he having satisfied the indebtedness which he assumed. Cancellation of the mortgage in so far as it concerned the part retained by Blanchard was never authorized.

The Association, in its petition in this cause, alleges in substance the aforestated facts and asks judgment against Blanchard for $173.13, being the aggregate amount of the above mentioned taxes and the cost of recording the subrogation certificates, together with 8% per annum interest from September 27, 1933, and 5% attorney's fees on said principal and interest. It further

prays that the encumbrance granted by Blanchard be recognized and enforced on the property as originally mortgaged less the portion conveyed to Querbes.

Defendant first filed exceptions of no cause and no right of action and pleaded that the claim sued on is barred by the prescriptions of three and five years. The exceptions were overruled, and the pleas of prescription referred to the merits.

In his answer Blanchard denies that he is indebted unto the Association, repleads the running of prescription on the claim, and calls Justin R. Querbes in warranty.

Querbes excepted to the call in warranty. The court sustained the exception and released him from the suit. He is no longer a party to the proceedings.

After a trial of the merits, there was judgment rendered in plaintiff's favor in accordance with its prayer. The pleas of prescription were overruled.

Defendant obtained orders for and perfected this appeal.

The plea of prescription of three years, on which defendant strongly relies, is predicated on the provisions of Section 1 of Act 26 of 1886, reading, "All tax privileges and tax mortgages granted by law to secure the payment of taxes hereafter becoming due, whether State, parish or municipal, shall be prescribed in three years * * *"; and it is also founded on a similar provision contained in Article 19, Section 19, of the Louisiana Constitution of 1921.

The position of plaintiff is that its claim is for the reimbursement of taxes that it paid pursuant to the authorization contained in defendant's act of mortgage, the provisions of which are above quoted; and that this is a personal action prescribable only by ten years under Civil Code, article 3544.

■ As to the taxes of $13.95 due to the City of Shreveport for the year 1932, and paid September 27, 1933, for which no certificate of subrogation was obtained, the position of plaintiff, we think, is well taken. The Association actually paid and extinguished that obligation, as it was authorized and directed to do; and by reason thereof there arose a personal claim for reimbursement of the funds thus expended. The plaintiff in the case of Sandidge v. Hunt, 40 La.Ann. 766, 5 So. 55, 57, was compelled to settle for taxes that became due before he acquired the affected property, and he sued his transferror to recover the amount paid. The court said:

"This is a suit for reimbursement of money expended in disincumbering the property of taxes, and not one for the collection of the taxes themselves. When payment was made, they became extinguished, and ceased to be.

"Hence this is in the nature of a personal action, and governed by the prescription of 10 years."

■ A different situation is presented, however, with reference to the state, parish and city taxes that were due on Blanchard's property for the year 1931. These were not actually paid and extinguished, as the parties contemplated in the mortgage act; instead, the Association elected to and did proceed under the provisions of Section 89 of Act 170 of 1898, as last amended by Act 228 of 1932. In part this section states:

"That the State tax collectors on behalf of the State and parish authorities and the tax collectors of the municipal authorities of the various towns and city governments and political subdivisions throughout the State, are hereby authorized and empowered to receive payment from any person other than the person in which name the property has been assessed, of any taxes demandable by such State, parish or municipal corporation or political subdivision, after the date upon which such tax becomes delinquent, and to subrogate the person paying the same to all rights, liens and privileges of the said State, parish or municipal corporation or political subdivision, incident to or growing out of said tax, and its recordation in the office required by law: provided, that when such payment is sought to be made by any person not holding a bond or note secured by a mortgage or privilege upon the taxed property, the written consent thereto of the taxpayer, must be filed with the tax-collector. Wherever herein the word taxes is used, it shall be held to include the taxes or assessments for paving recorded against or due by the property concerned.

*"The payment herein contemplated to be made by a person other than the tax debtor shall not be construed or held to be a payment or satisfaction of the tax."* (Italics ours.)

The said section further provides for the issuance of a certificate of subrogation to said third person; for the selling of the property by the sheriff in the name of the

taxing authority, as in ordinary tax sales, when requested to do so by the subrogee or his assignee; and it outlines the procedure to be followed and the charges to be made in connection with the sale. It concludes with the expression, "The remedies for the collection of taxes, the sale of taxed property herein provided shall be in addition to and not exclusive of the remedies otherwise provided by law."

As authorized in said statute, the Association paid the required amounts of said 1931 taxes to the proper officials and obtained duly executed and the above described certificates of subrogation and assignment. Recordation of these followed shortly afterwards. By that action it merely purchased and acquired such rights, privileges and liens as the named governmental subdivisions possessed against the defendant's property. No actual payment or satisfaction of the taxes was effected through the course pursued, as the quoted statutory provisions specifically and plainly show and state.

The privileges and mortgages that secured the payment of such taxes and were assigned to plaintiff, have since become ineffectual by reason of the elapse of the above mentioned prescriptive period of three years. Furthermore, the Association acquired no right to impose personal liability on the tax debtor, for the assignors themselves had none. Liability for taxes on immovables is in rem only. Barthold v. Dover, La.App., 153 So. 49; State ex rel. Cain v. H. D. Foote Lumber Co., Inc., 17 La.App. 234, 135 So. 769; Louisiana Oil Refining Co. v. Louisiana Tax Commission et al., 167 La. 605, 120 So. 23.

The Association could either act pursuant to defendant's authorization and make payment in satisfaction of the taxes due in 1931, as contradistinguished from a purchase of the tax claims, and thus be legally subrogated to the liens and privileges of the taxing authorities (Civil Code, article 2161; Timken v. Wisner Estates, Inc., 153 La. 262, 95 So. 711; Abbott v. Heald, 128 La. 718, 55 So. 28); or proceed under the provisions of said Act 170 of 1898, as amended, and obtain not only the liens and privileges thereby afforded, which likewise result from the legal subrogation, but also the various benefits and advantages, particularly those relating to the enforced collection procedure, that are therein provided. It elected to be conventionally subrogated and accept the avails of such legislation; and it must submit to the disabilities that flow therefrom.

As relates to said 1931 taxes, this suit is in effect nothing more than one for the collection of them under the discussed conventional subrogations. There was no payment of such taxes made in accordance with the provisions of the executed act of mortgage as would give rise to a personal action for reimbursement, prescribable only in ten years and warranting recognition of the stipulated mortgage on the property; and for the reasons stated above the Association is not entitled to recover herein the amount spent in connection with those taxes and the cost for recording the subrogation certificates.

Plaintiff's counsel cite numerous cases, in addition to that of Sandidge v. Hunt, supra, which is above discussed. These are inapplicable. They hold that where a person actually pays and extinguishes a debt for another, a personal obligation for reimbursement arises which is prescribable in ten years. None deals with the conventional subrogation of tax claims as is here presented.

Therefore, the judgment is amended by reducing the principal amount thereof to $13.95, and as thus amended, it is affirmed. Appellee shall pay the costs of this appeal.